OPINION of the Court, by
Ch. J. Boyie.
This is a contest for land under adverse interfering claims. The appellee, who was defendant in the court below, has the elder entry and patent, on both of which he re-líes. As, however, the appellants were complainants, it is proper first to inquire into the validity of the entry under which they derive title. It was for 915 acres, and calls for « beginning at Thomas Cameal’s west cor» ner of his 1600 acre survey on the Ohio waters, below the mouth of Licking, at a sugar tree and hickory : thence S. 45 W. 990 poles to an elm and walnut,'near a drain, corner to Merry Walker; thence N. 45 W. 450 polcs with Walker’s line to his corner in Yaughan’s line;thence S. 620 poles with Vaughan’s line to his S. E. corner; thence S. 68 E. 1160 poles, to three walnuts, one of which stoops, and on a flat ridge; thence N. 45 E. 790 poles, to Aaron Bledsoe’s south corner of his 683 acre survey ; thence N, 45 W. 400 poles, with said Bledsoe’s line to his west corner; thence N. 45 E. 520 polesj to Robert Johnson’s survey of 1000’acres; thence N. 45 W. >83 poles, to Robert Johnson’s 200 acre survey ; fence S. 45 W. 160 poles with said Johnson’s line *134 to his corner; thence N. 45 W. 200 poles with his line to Carneal’s line ; thence S. 45 W. 136 poles, to Car-neal’s corner; thence N. 45 W. 304 poles, to the beginning.”
Example of a variance between the calls of the entry & the furvey thereof, which was too great to enable another locator by reafonable diligence to find out the furvey by reference to to the entry up. on which it was made.
It appears that the surveys, the corners of which are called for in this entry, were made but a few days pri- or to the date of the entry. Of course they were not of record; nor is it pretended that their lines and corners had acquired any degree of notoriety. It is however admitted that the corners were in fact marked as they are described in. the entry; and as patents have since issued upon those surveys, we ought to presume, unless the contrary appeared, that the lines from corner to corner were also marked. Under such circumstances, we cannot doubt if a subsequent inquirer had found the beginning or other corner called for in the entry, that he might with reasonable diligence have ascertained the other corners, and have thus identified the land intended to be appropriated by the entry.
But the great difficulty would have been to have found the beginning or other corner. As the corners called for were not notorious, and the certificates of surveys not made out, or at least not recorded, it is obvious that the beginning or other corner called for could only have been found by the surveys having conformed to the entries on which they were made, and the entries themselves being sufficiently certain and precise.
It was not pretended in the argument that any of those entries are sufficiently established, except that of Car-neal. Carneal’s entry calls to begin “ on William Peache’s back line from the river, 304 poles S. W. from his east corner of his 5000 acre entry on Dry creek : thence S. E. 304 poles, thence S. W. at right angles for quantity.” Peache’s entry calls to begin “ at a marked tree about 200 yards above the mouth of Dry creek, on the banks of the Ohio, and running down said river about one mile, and up on both sides of the said creek, and back south and southwest, to include a marked beach R. I. 1773, and some fallen timber, for quantity.”
Dry creek is admitted to have been generally known by that name at and prior to the date of Peache’s entry, and a remarkable place of fallen timber, within the reach of a survey of 5000 acres, including the mouth of the creek, is delineated upon the connected plat, and is agreed to have existed before the entry was made, and *135 to have been distinguished by the appellation of the Fallen Timber; but there is no proof of the existence of cither of the marked trees called for by the entry. Whether the entry can be supported, according to the principles which have prevailed for many years in similar cases, in the absence of all proof of those marked trees, is at least very doubtful, since if they were shewn their position might tend to modify the figure of the survey.
But if it can be supported, the survey should be made by extending the line on the river one mile below the mouth of the creek, and to a point 200 yards above its mouth ; thence up the creek so far that by pursuing the Courses afterwards described in the entry as nearly as practicable, so as to include the fallen timber, and contain the quantity of 5000 acres. The precise attitude which these latter lines ought to assume is difficult to determine, nor is it material to do so : for it is manifest from an inspection of the connected plat, that let the mode of closing the survey upon these principles be what it may, the lines could not reach within less than several hundred poles of the survey as made upon Carneal’s entry, and Peache’s entry could consequently furnish no clew by which a subsequent inquirer could have found the lines of Carneal’s survey, nor of course the beginning corner of the complainant’s entry. It is true that a survey had been made upon Peache’s entry a few days prior to the date of the complainant’s, but the survey was not made in conformity to the location. It did not begin at a point ,200. yards above the mouth of Dry creek, nor did it extend one mile below, and it included, only a part of the fallen timber, and was in other respects materially variant from the entry. So that if á subsequent locator had been bound to have searched for the lines of the survey, he might not have found them, or if he had found them he could not be presumed to have known they were made for a survey on Peache’s entry. But he was not bound to have searched for those lines, nor could he have had any motive to have done so, for the purpose of finding or aiding the complainant’s entry : for it palls for* Carneal’s survey, and not for Peache’s, and Carneal’s survey was not of record, and his entry was made expressly to depend upon Peache’s entry and not upon his survey.
To conduct a subsequent locator to Carneal’s survey, and to the complainant’s beginning upon that survey, *136 there was, therefore, nothing 'of record which he waá bound to.notice, except Peache’s entry,, and th,at wshave seen, could not have guided him to those objects.
. The court below therefore correctly determined the ■ entry in question to be invalid j. and the decree must he affirmed with costs/