CASE 46.—ACTION BETWEEN JAMES RAMSEY AND SHERMAN MORROW TO DETERMINE THE LOCATION OF A CERTAIN LINE AND CORNER TO THEIR LAND.—April 23, 1909.

## Ramsey v. Morrow

Appeal from Wayne Circuit Court.

W. L. BROWN, Special Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Boundaries—Lost Corners—Determination—Rules.—The rule for establishing a lost stake corner to run the course called for from the known corners to the intersection of the lines can not be applied for the determination of the eighteenth corner in a description, where the lines from the seventeenth and nineteenth corners extended would never intersect.

2. Boundaries—Lost Corners—Courses and Distances.—The ordinary rule that distances yield to courses, and both to natural objects or marked monuments, does not apply, where it is manifest from the patent as run out that proximate certainty may be accomplished by changing a course, instead of the distance, which may be done.

3. Boundaries—Marked Lines—Establishment.—Where a line was marked as such at the time of survey according to the surveyor's duty, such line established itself in a suit to determine a lost corner, though the corner was not marked.

4.   Boundaries—Marked Line—Question for Jury.—Where, in an
     action to determine a lost corner, there was some evidence
     that marks alleged to designate an ancient line had been made
     many years after the survey by another and for a different
     purpose, whether the line was anciently marked by the sur-
     veyor was for the jury.
5.   Appeal and Error—Instructions—Prejudice.—Where appellant
     did not show adverse possession for a longer period than six
     or seven years consecutively, and for much of the time the
     tenant in possession paid rent to the owners of each of the
     alleged conflicting patents, appellant was not prejudiced by
     erroneous instructions submitting the question of adverse pos-
     session.

GRIFFIN, KENNEDY & BERTRAM for appellant.

HARRISON & HARRISON for appellee.

OPINION OF THE COURT BY JUDGE O'REAR.—Affirm-
ing.

Appellant claims title to a tract of land in Wayne
county. The land is covered by a patent for 200 acres
issued to T. C. Dick on a survey dated January 20, 1846.
Appellee claims title to a part of a 1,100-acre patent
issued to Morrow and Dodson on a survey dated Jan-
uary 19, 1846. The patent boundaries call for the
same objects and upon the same courses and for the
same distances for nine of the calls. A dispute has
arisen between these two litigants as to where a cer-
tain corner and two of these lines are properly lo-
cated. There can not be a conflict between them.
Hence there is no question of superiority of one
grant over the other. If the corner is established,
as claimed by appellant it should be, then the strip
of land in dispute would be included in the Dick pat-
ent and would belong to appellant. If, however, the
lost corner and the two lines from it should be estab-
lished as contended for by appellee the disputed strip
would be within the Morrow-Dodson patent. Thus
it will be seen that the location of the lost corner

is the principal thing to be done to settle the controversy. There was also a question made by appellant that, although the lines of the Dick patent do not embrace the disputed strip, yet the former owners marked a "conditional line" between their lands so that it would fall to appellant's boundary. He also claims it by adverse possession. The Dick patent is located correctly and without dispute as to its beginning corner, and all lines correspond substantially and satisfactorily with the actual running on the ground till the seventeenth corner (a chestnut oak) is reached. The nineteenth corner (a red bud and black oak in a gap of the ridge) is also located without dispute. The seventeenth and nineteenth corners of the Dick survey are identical with corners called for in the Morrow-Dodson patent. From the seventeenth corner of the Dick patent the call is (and so it is in the Morrow-Dodson patent) N. 60 deg. E., 108 poles, to a stake; thence N. 75 deg. E., 230 poles, to the red bud and black oak. But if the eighteenth call is run N. 60 deg. E., 108 poles, then to reach the red bud and black oak corner would require a radical change of both the course and distance of the next line to reach the natural objects, the red bud and black oak, viz., a course N. 84 1-2 deg. E., the length of the line being not given, but it would be longer than the line called for in the patents.

One rule laid down for establishing a lost stake corner is to run the courses called for from the known corners to the intersection of the lines. Haggan v. Wood's Heirs, Ky. Dec. 274. But there is no hard and fast rule on the subject. The object is always to carry into effect what was done and attempted to

be done when the entry and survey were made. The rule laid down in Haggan v. Wood, supra, can not be applied in this case, because if the lines from the seventeenth and nineteenth corners should be extended, they would never intersect. It is clear that an error was made by the original surveyor in copy-ing his field notes, or in entering them. The same surveyor surveyed each entry, surveying the Morrow-Dodson entry first. He had the same person as a chainman in each instance. It is quite likely that, when the Dick entry was run out until its line reached the Morrow-Dodson entry from that point the calls of the latter were copied as the calls for the Dick sur-vey. That was a customary and a natural way of do-ing such work. Consequently any error made in en-tering or transcribing the calls of the former survey along that line would occur also in the Dick patent. In running the line from the eighteenth corner, the stake, to the red bud and the black oak, if the course named, N. 75 deg. E., is pursued, the natural object called for would never be reached. As the corners before the eighteenth were natural objects, and sat-isfactorily established, the error must be corrected somewhere between the seventeenth and nineteenth corners. By beginning at the red bud and black oak, and reversing its call to the stake, then reversing the next call, it is found that by changing the course from N. 60 deg. E. to N. 80 deg. E. the distance 108 poles runs out at the seventeenth corner. Ordinarily the rule is that distances yield to courses, and both to natural objects, or marked monuments. Bryan v. Beckley, Litt. Sel. Cas. 93, 12 Am. Dec. 276. But this is not always so, for if it be manifest from the pat-ent as run out, that approximate certainty may be

accomplished by changing the course instead of the distance, then that is to be done. Blight v. Atwell, 4 J. J. Marsh. 278.

This case was tried before a jury. There was submitted to the jury the question of the location of this lost corner and its lines. The court told the jury that the preceding and following known marked corners must be accepted, and that if the line reversed from the red bud and the black oak corner, so as to run S. 75 deg. W., 230 poles, was a marked line, with ancient marks apparently made contemporaneously with the making of the original survey, the jury should find that to be the line, if then by extending the next line back 108 poles it would exactly reach the chestnut oak established as the seventeenth corner. This instruction was really more favorable to the appellant than it was entitled to, for if the line was marked as a line at the time the survey was executed, and presumably it was, as it was the duty of the surveyor to have marked it (Bryan v. Beckley, supra; Johnson v. Marshall, 4 Bibb, 133), that marked line controlled and established itself, even though the corner was not marked (Thornberry v. Churchill, 4 T. B. Mon., 32, 16 Am. Dec. 125). However, there was evidence that the line N. 75 deg. E. was marked for 100 poles, with ancient line marks made in the execution of that survey. There was also some evidence that these marks had been made many years later by another person and for a different purpose; but that was a question for the jury, and the evidence on the whole seems to sustain their verdict. Thus the line N. 75 deg. E., 230 poles, was established, which established the stake corner which is the lost corner, at its extremity. As, then, the

seventeenth corner was already established, and the eighteenth was established by the verdict of the jury, the remaining line between the two should have been run without regard to course or distance, although as a matter of fact it coincides in distance with the call in the patent. Aside from the convincing reason found in the old marked line on the N. 75 deg. E. call, for establishing that line at that place, it is manifest to us from other facts that such is the correct location. Appellant's theory, if executed, would have cut the Morrow-Dodson patent into two parts, excepting a very narrow elongated strip. It is not probable the prior entrants with the power of first selection, would have voluntarily mutilated their entry and tract in such manner. Again, as we find there was a mistake made by the surveyor in transcribing the result of his work, it is more likely he would have made the error of substituting an 8 for a 6, than of substituting 75 for 84 1-2, and making a material discrepancy also in the length of the line.

It is contended that the remote vendor of appellant and the former owner of the Morrow-Dodson patent established an agreed dividing line north of the line herein established between the lands which was marked and recognized by them and their vendees for many years as the true dividing line between their lands; but we do not find any evidence in the record that any of the owners of these two tracts at any time marked the line claimed by appellant. There was some evidence that a marked line existed at the point claimed; but part of it was the extreme northern line of the Morrow-Dodson patent, and part of it made for other purposes. None of it was shown to have been made under any sort of an

agreement between any owners of the two patents here in question, that it was to constitute a division line between them.  Nor was there evidence that they recognized such line as their division line.

The question of adverse possession the trial court undertook to submit to the jury, but in instructions that were erroneous.  However, they were not prejudicial to appellant for the reason that there was a failure of proof on his part to sustain him in that issue.  He did not show adverse possession of any of the disputed land for a longer period than six or seven years consecutively.  Then for much of the time the tenant in possession rented from and paid rent to the owners of each of the patents, so each owner had equal benefit from that fact.  There should have been no instruction submitted on that issue.

Upon the whole case we are satisfied no error prejudicial to appellant's substantial rights has been committed.

Judgment affirmed.