## Taylor & Crate, et al. v. Forester, et al.

(Decided May 7, 1912.)

### Appeal from Harlan Circuit Court.

1. Pleading—Cross-Petition.—If a third person who is a necessary party to an action filed an intervening petition, it may be taken as his answer, and as a cross-petition against the original defendant to the action.

2. Boundary—Lost Corner.—The place where a lost corner stood may be identified by parol evidence.

WM. LOW for appellants.

J. G. and J. S. FORESTER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

J. W. Forester filed suit in the Harlan Circuit Court against Taylor & Crate and Jones Lumber Company—hereafter called Taylor & Crate—and some tenants of theirs, alleging that he was the owner of a tract of land containing about 100 acres on Laurel branch, and that Taylor & Crate had entered on the land and were cutting timber therefrom. In the action, he obtained an injunction restraining the defendants from further trespasses and afterwards the parties made an agreement by which the defendants were authorized to cut and remove timber from the land until the rights of the parties were determined.

Taylor & Crate filed an answer, in which they denied Forester's title, and alleged that in 1887 he conveyed the land in dispute to Howard, and by regular conveyances it came into their title and possession.

Thereafter, the appellee, A. B. Asher, filed an intervening petition, asserting that he was the owner and entitled to the possession of the land and consequently to any damage caused by the conversion of timber therefrom by Taylor & Crate. He prayed that he be made a party to the action, that his petition be treated as his answer against Forester, and as a cross-petition against Taylor & Crate, and asked judgment against them for the amount of damage sustained. By order of court, Asher was made a party to the action, and his petition was ordered to be treated as his answer and as a cross-petition. The motion of Taylor & Crate to strike the cross-petition from the record upon the ground that it

was unauthorized by the Civil Code was overruled, and thereupon they filed an answer denying the title of Asher.

Upon exhibition of the title of Asher, it was conceded by Forester that Asher was the owner of the land in controversy, and upon hearing the case the court rendered judgment in favor of Asher against Taylor & Crate for $828.63. Upon this state of the record, the controversy here is entirely between Taylor & Crate, as appellants, and Asher as appellee.

The first objection of the appellants is that the court erred in permitting the pleading of Asher upon which he recovered the judgment complained of to be made a cross-petition against them. It is evident that Asher was a necessary party to the action, and so he had a right to come in by an intervening petition and assert his title to the land in dispute. Section 111 of the Civil Code provides that:

"No pleading except an answer to an original petition or the plaintiff's reply to such answer, shall be made a cross-petition."

And in section 96 of the Civil Code, a cross-petition is defined as:

"The commencement of an action by a defendant against a co-defendant or a person who is not a party to the action, or against both * * * and is not allowed to a defendant except upon a cause of action which affects or is affected by the original cause of action."

When the court permitted, as it properly did, the intervening petition of Asher to be taken as his answer to the petition filed by Forester against Taylor & Crate, Asher had the right to make the answer a cross-petition against his co-defendants. In other words, his attitude was the same as if he had been joined as a defendant in the original action with Taylor & Crate.

Taking up the other questions in the order in which they are presented by counsel for appellants, the next objection to the judgment is that there was no competent evidence to support it. The entire evidence as to the value of the timber converted by Taylor & Crate was furnished by J. F. Skidmore, and upon the strength of this evidence the court found for Asher the amount specified in the judgment. It appears from the record that before Asher became a party to the action, Forester, and Taylor & Crate had entered an agreed order, by the terms of which Taylor & Crate were allowed to cut

and remove timber from the land in dispute, and it was further stipulated in the order that:

"If it shall be finally adjudged that the said Forester is the owner of said land and timber taken therefrom under this agreement, they will pay to the said Forester for said timber as follows: For first-class logs, $12.50 per 1,000 feet, log measure; for second-class, $10.00 per 1,000 feet, log measure; measurements to be by Doyle's rules; but there shall be deducted from said payments the cost of cutting and hauling said timber to floating water, which is agreed to be $7.50 per 1,000 feet right of way over Wilson Howard's land."

Under this agreement, Skidmore acted as agent of Taylor & Crate in looking after and keeping an account of the value of the timber removed from the land. Skidmore testifies that he kept a record of the value of the timber removed, and the expense of cutting and hauling the same and that the balance due by Taylor & Crate was $828.63. While Taylor & Crate do not dispute the correctness of the account made out by Skidmore, they insist that as Asher was not a party to the agreement made between Forester and Taylor & Crate, he can not avail himself of evidence that would be competent and conclusive as between Forester and Taylor & Crate. Having this view, it is argued that there was no evidence in behalf of Asher as to the value of the timber, and, therefore, no judgment should have been rendered in his favor. We think, however, that when Asher became a party to the action, he was entitled to have the benefit of any orders made in the case that affected his interest, and as it is shown by the record that Asher was the owner of the timber cut by Taylor & Crate, we see no reason why Taylor & Crate should not account to him for the value of the timber to the same extent as they would have been obliged under the agreement to account for it to Forester. If the case had proceeded to judgment, without the intervention of Asher, and the court had adjudged that Forester was entitled to the timber cut and appropriated, no question could or would have been raised by Taylor & Crate as to the correctness of the amount found to be due by Skidmore and as Asher took Forester's place, we do not perceive how the rights of Taylor & Crate were at all prejudiced by the action of the lower court in accepting Skidmore's evidence against them in favor of Asher.

The principal question in the case concerns the title

to the land from which the timber was cut, and this issue centers around the calls of a patent issued to Abraham Slusher in 1843 for 100 acres of land on—

"The head of Laurel branch, waters of the right-hand fork of Straight Creek, and bounded as follows, to-wit: Beginning at a poplar and beech, in the head of the left-hand fork of said branch; thence S. 19 E. 70 poles to a beech and chestnut; thence S. 43 E. 56 poles to a chestnut and two beeches; thence S. 20 W. 152 poles to a buckeye; thence W. 80 poles to a stake; thence N. 15 E. 253 poles to the beginning."

In 1871 Forester became the owner by purchase at a judicial sale of the land covered by this patent, as well as other land, and took possession under his purchase. In 1874 Forester conveyed by title bond the tract of land, including the Slusher patent, to Shadrick Helton. In 1875 Helton assigned this bond to John H. Saylor, and in 1890 John H. Saylor assigned it to Belcher, and soon thereafter Forester conveyed the land described in the title bond that he had given Helton to Belcher, the immediate vendor of Asher.

It will be observed that the fourth call in the Slusher patent is a "Buckeye," and the location of this fourth corner is the point in the case about which the chief controversy arises. The first, second and third corners were well located by the surveyor, but the "buckeye" called for as the fourth corner had disappeared many years before the survey was made and it is the contention of Taylor & Crate that the lines of the patent should be run substantially according to the courses and distances, without particular references to the lost corner where the "buckeye" stood; while Asher insists that if the place where the "buckeye" stood could be located, that the fourth call should be run to the place where it stood, although the result might be to extend the third call of the patent, and to change the course on that call as well as succeeding calls. It is too well settled to need even the citation of authority that courses and distances must give way to marked objects. While conceding this, counsel say that the evidence as to where the "buckeye" mentioned as the fourth corner stood, was not sufficient to warrant running the third line to the place claimed as the "buckeye" corner by Asher, especially when to do so made it necessary to extend materially the distance of the third, as well as the fourth and fifth calls. If the "buckeye" corner is located at

the place where Asher contends the "buckeye" stood, then the timber in controversy was cut from the land owned by Asher; on the contrary, if this fourth corner is located at the point where Taylor & Crate say it should be located, the timber in controversy was not cut from land owned by Asher. So that, the controlling question in the case is the correct location of this buckeye corner.

Upon this point, Forester testified that he was well acquainted with the location of the "buckeye" designated in the Slusher patent as the fourth corner, and that it was located on the bank of the Laurel fork, near a deer lick, and about 100 yards therefrom; but that the tree had been washed away. He said that he had known this "buckeye" tree for 40 years, and had seen the marks on it, indicating that it was a corner tree, and a fourth corner in a marked boundary. He further testified that he lived on the land that he purchased at judicial sale, and when he sold to John H. Saylor, Saylor moved on the land and lived there several years. John H. Saylor, a son of John H. Saylor, testified that he was well acquainted with the Slusher survey and the boundary of land bought by his father from Forester. That he purchased the land from his father, and lived on the land several years, but afterwards consented that his father might sell it to Belcher. He further said that when his father owned the land, and while he owned it, that they claimed the "buckeye" as the corner, and that the "buckeye" was a well marked line tree and corner, and stood at the place claimed by Asher and testified to by Forester. Two or three other witnesses who lived in the neighborhood and were familiar with the land, also gave evidence as to the location of this "buckeye," and the fact that it was a marked line and corner tree, and recognized as a corner of the Slusher patent. It is also shown that the Saylors during the time they owned the land, built a house and occupied it for a number of years, by themselves and tenants, and cleared up land that is within the lines of the Slusher patent as claimed by Asher, but outside of the Slusher patent if the lines are run according to the contention of Taylor & Crate. In other words, if the lines of the Slusher patent are run to the place where the witnesses for Asher say the "buckeye" stood, the house and clearing was within the Slusher patent; but if the lines of the Slusher patent are run according to the courses and distances in the patent, without reference to the "buckeye," the house

and clearing was outside the lines of the patent. It is further shown by evidence that no other "buckeye" was found or located on these lines, except the one identified by Forester, the Saylors, and the other witnesses. This circumstance, together with the undisputed evidence that this "buckeye" stood at the place the witnesses for Asher say it did, and the further uncontradicted evidence that the Saylors while they owned the Slusher patent built a house and made a clearing within its lines, recognizing the "buckeye" as a corner, is persuasive evidence that the "buckeye" spoken of by these witnesses is the "buckeye" mentioned in the patent. The evidence of course is not entirely satisfactory, but it is the best obtainable under the circumstances. If there was only one marked "buckeye" in that immediate vicinity and it was now standing and the marks on it indicated that it was a line and corner tree, we think there would be no doubt that the calls of the Slusher patent should be run to it, although to do so it might be necessary to extend some of the lines as well as to change some of the courses; but as the "buckeye" is not standing, it was competent to prove where it stood, and that it was recognized as a marked line and corner tree by the owners of the land, and by old citizens in the neighborhood who were acquainted with it as one of the corners of the Slusher patent. When there is a dispute as to the location of a lost corner, it is admissible to show by persons who owned the land the location of the lost corner and also admissible to show by other persons who qualify themselves to testify that the corner was for many years recognized to be at a specified place, and that the place at which they testify the corner stood was treated by adjoining owners as well as other persons as the corner. Mercer v. Hauts, 4 Bibb., 399; Frances v. Hazelrigg's heirs, 1 A. K. Mar., 93; Tandy v. Smith, 3 Bibb., 418; Wallace v. Maxwell, 1 J. J. Mar., 447.

We think the lower court correctly decided the case, and the judgment is affirmed.