## Middlesborough Town & Lands Co. v. Hurst, et al.

(Decided May 7, 1912.)

### Appeal from Bell Circuit Court.

Land—Disputed Line—Action for Possession of Land—Ownership.— In an action seeking to be adjudged the owner and entitled to the possession of certain land, where the question turned upon a disputed line, Held, That the evidence was conflicting and it was the province of the jury to determine the location of the line, and under the evidence their verdict will not be disturbed.

SAMPSON & SAMPSON for appellant.

COLSON & HURST for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This appeal grows out of a dispute between the Middlesborough Town & Lands Co. and W. D. Hurst and wife over a division line. They claim title from a common source. The issue is necessarily a narrow one and is, in fact, confined to the location of a certain walnut tree, recognized by both parties as a corner. The location of this tree settles the controversy.

In brief, the history of this litigation is, as follows: John G. Colson died in 1882, leaving a landed estate. By his will he devised a certain portion of his land to his youngest daughter, Eudoxie Colson, for life, with remainder to her heirs, and directed his executors to divide his remaining lands among his other children. The division was made in accordance with the provisions of the will. The particular tract devised to Eudoxie was known as the Hunter tract. The executors, in the division, set apart to Cordie, another daughter, an adjoining body of land, composed of what was known as the Tinsley tract and the Snuffer tract. Thereafter Eudoxie married W. D. Hurst, and Cordie married one Fitzpatrick, and the land which was set apart and conveyed to Cordie Colson was by her conveyed to Alec. A. Arthur, trustee, and, by mesne conveyances, passed from him to the Middlesborough Town & Lands Co. So that the Middlesborough Town & Lands Co. is the owner of the real estate which Cordie Colson inherited from her father and which was conveyed to her by his executors. The land which Eudoxie Hurst inherited from her father is still held and owned by her. This land lies on Yellow Creek, and one of the corners called for in the deed of Eudoxie Colson, and also in the Cordie Colson deed, was a black walnut tree standing on the east bank thereof.

The town of Middlesborough emptied all its sewage into this creek. It was a sluggish stream, and it was found necessary to adopt some means to make it more expeditiously carry off the waste matter deposited in it. This, it was thought, could be accomplished by straightening the creek, or rather, by digging a canal and having the creek abandon its old bed and run in the canal, and the town accordingly caused this to be done. In building the canal the walnut tree, which was a recognized corner, was cut down, and the bed of the canal now occupies the place where the tree once stood.

Recently the Middlesborough Town & Lands Co., conceiving the idea that Hurst had enclosed a part of its land, brought a suit in the Bell Circuit Court in which it prayed that it be adjudged the owner and entitled to the possession of the land, and that the defendants be directed to surrender same up to it. The defendants denied that they were possessed of any of the land belonging to the plaintiff, and pleaded affirmatively that the fence which they had built enclosing their land was along the true boundary line. The case was tried out on

the question as to the location of this line and the jury returned a verdict in favor of the defendants. The plaintiff appeals and seeks a reversal, primarily upon the ground that the verdict is flagrantly against the evidence.

The accompanying map serves to illustrate the lay of the land and respective claims of the parties. "B" represents the point where appellant claims the walnut stood, and the line "B-X-Y-Z" the true boundary line, according to its contention. "C" represents the point where appellees claim the walnut stood, and the line "C-D-E-F" the true division line, as claimed by appellees. The location of the old creek bed, the canal and the railroad are designated on the map.

Appellant introduced two surveyors showing more or less familiarity with the boundaries of these deeds, and they located the walnut at the point "B." J. C. Richardson testified that he surveyed the land in 1889, at which time the walnut tree was standing, as was also a beech tree called for at the next corner east of it on this line; that the fence at that time was standing and run from the walnut tree, and that some eight or nine years before the institution of this suit the appellees caused the fence to be moved from the place where it then stood to where it now is, a distance of about seventy-five feet. Another surveyor, James Howard, made a partial survey in 1909. Reversing the calls, he first ran the line "Z-Y-X-B," and then went to the point "R," where an elm tree, known to be a corner, stood, and, reversing the course, run the distance called for in the deed and extended same until it intersected the line first run, and this he established as the true location of the black walnut. He testifies that along the line "B-X" there was evidence in the field of the old fence row. Several witnesses were introduced who testify that appellees caused this fence to be removed and that, as now located, it is from sixty to seventy-five feet south of where it formerly stood.

As opposed to this testimony, appellees introduced one L. K. Rice, a surveyor, who had surveyed this same line. He knew the walnut to be a corner tree and he went back to the point "F," where there was a black gum which was pointed out to him as a corner tree, and which had the marks of such, and, reversing the calls, ran out the course and distance called for in the deed. This made the location of the walnut at "C," the point claimed by appellees. Several witnesses were introduced by appellees who testify that there was a lane between the two lines contended for by these litigants, and a fence formerly stood on each side thereof; that some years ago the fence between the points "B-X" was removed, but that the fence between the points "C-D" remains now where it then stood; that this fence ran up to the walnut tree when it was standing on the bank of the creek, and that a gate hung to said tree and formed a part of this line fence. Mrs. Fitzpatrick testifies that, in her judgment, the location of the tree as fixed by the witnesses for appellant is correct. She had sold her land many years before and had not been upon the place a great deal since she disposed of it. On the other hand,

Mrs. Hurst testifies with equal certainty and as much plausibility that the location of the walnut as described by appellees' witnesses is correct.

With the evidence thus conflicting, it was the province of the jury to say where the trees stood. They saw the witnesses, observed the way and manner in which they testified, were doubtless acquainted with many of them, and are much better qualified to pass upon the weight that should be given their testimony than we. Under such circumstances we would not be warranted in disturbing their finding.

Judgment affirmed.