## Louisville Property Company, et al. v. Lawson, et al.

### (Decided December 5, 1913).

### Appeal from Whitley Circuit Court.

1. Adverse Possession—Extent of Possession.—Where one owns two or more tracts of disconnected land, the actual entry and adverse possession by another upon one of the tracts, although the entry be made under a deed that includes all of them in its boundaries, will not extend his actual possession to any of the others. If the intruder desires to hold all of them by adverse possession, he must do such act as to each as will constitute adverse possession as to each particular tract, as each disconnected tract is to be treated as a separate disconnected boundary.

2. Adverse Possession—Instructions—Sufficiency of Evidence.—In an action for the possession of an unenclosed tract of woodland, it was error for the court to submit to the jury the question of the adverse possession of such tract, where there was no evidence whatever that the defendant, or any of his vendors, had ever had actual possession of the tract.

3. Boundaries—Question for the Jury.—In an action for the possession of land, there being a contrariety of evidence as to the true

location of the lines of the patent, alleged to include in its boundary the land in controversy, it was error for the court to locate the lines of the patent, but the determination of their location should, under proper instructions, have been submitted to the jury.

STEPHENS & STEELY and TYE & SILER for appellants.

HENRY C. GILLIS for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This action was brought by the appellant, Louisville Property Company, against the appellees, J. C. Lawson and M. A. Wheeler, to recover damages for the alleged wrongful cutting and removal by them of timber from an eighteen-acre tract of land described in the petition, of which appellant claimed to be the owner and in possession. By an amended petition filed before appellees answered it was averred that, after the institution of the action, appellant sold and, by deed, conveyed to one Thomas Cairns 10,443 23-100 acres of land, including the eighteen acres described in the original petition; that Cairnes later died intestate, leaving surviving him a widow and five children named in the petition, who were alleged to be the owners of the land conveyed the intestate by appellant, and made plaintiffs in the action. The answer admitted the cutting of timber by appellees upon the eighteen-acre tract of land described in the petition, but denied that it was wrongfully done; also denied appellant's title to or possession of the land; alleged title to same in the appellee, J. C. Lawson, and that he and his vendors had been in the actual, adverse and continuous possession thereof for more than fifteen years before the institution of the case.

The affirmative matter of the answer was controverted by reply and, with the issues thus formed, the parties went to trial, which resulted in a verdict in behalf of appellees. This appeal is from the judgment entered on that verdict.

Appellants claim title to the eighteen-acre tract of land in controversy under a 48,040-acre patent, issued to Alfred L. Clapp in 1873, and the appellee, Lawson, claims title to it under a fifty-acre patent, issued to William Lawson in 1845. The Clapp patent embraces several senior grants, but none of these covers the eighteen-acre tract. It is agreed of record that appellants have a

perfect title to the land covered by the Clapp patent and that the appellee, J. C. Lawson, has a similar title to the land covered by the Lawson patent; but it is contended by appellees that the eighteen-acre tract is outside the boundary of the Clapp patent and embraced in that of the Lawson patent. So the real controversy is as to the true location of the lines of the Lawson patent. If the lines of the Lawson patent are located as claimed by appellants, the land in controversy is not covered by the Lawson patent. If established, as claimed by appellees, it is covered by the Lawson patent. The circuit court was of the opinion that the evidence conclusively established the boundary of the Lawson patent as claimed by appellants, hence it instructed the jury as follows:

"The eighteen acres of land in controversy in this action is located within the A. L. Clapp patent of date October 23rd, 1873, and is not embraced in any exclusion mentioned in said patent, and you will find for the plaintiffs, Louisville Property Company, unless you believe from the evidence that the defendant, J. C. Lawson, and those under whom he claims, have for a period of fifteen years before the commencement of this suit been in the actual, open, visible, continuous, notorious and peaceable possession of the said eighteen-acre tract of land alone or in connection with adjoining lands and constituting one single boundary, holding and claiming the same as his or their own, adversely to the plaintiffs, Louisville Property Company and others, and all the world, to well marked and clearly defined lines and boundary, in which event your finding will be for the defendant, J. C. Lawson."

It is insisted for appellants that the trial court erred in submitting to the decision of the jury, under this instruction, the appellee, J. C. Lawson's, defense of adverse possession relied on to defeat the action, as it authorized them to find for appellees, if such possession was of an adjoining tract for the statutory period, provided he also claimed, during that time, possession of the eighteen-acre tract in controversy.

As far back as 1815, this court in Trimble v. Smith, 4 Bibb, 257, Chief Justice Boyle writing, announced the principle for which appellants here contend,. it being in the opinion said: "Where there is no adverse possession there can be no doubt that a man by an entry into a part of a tract may acquire the possession of the whole, pro-

vided he may lawfully enter upon the whole; but to construe an entry into part to which he has right, to give him possession of another part to which he has no right, would be making an act which was right in itself tortious by construction. This would be wholly unwarranted by any precedent, and in direct violation of the principle of law which requires where an act is done which is susceptible of a twofold construction, one of which is consistent with law and the other not, that the former should prevail. A distinction is taken, and obviously for good reasons, between the case where an entry is to have the effect of vesting or divesting an estate, and the case where the estate is already in the person making the entry and the possession vacant. In the former case an entry into part gives possession of that part only; but in the latter a general entry into part reduces the whole to actual possession.''

While in one or two instances this court may have appeared to depart from the rule announced in the case *supra,* it was inadvertent rather than intentional, and in more recent years it has been repeatedly reaffirmed in numerous cases, among the latest being those of Whitley County Land Co. v. Powers, 146 Ky., 801; Burt & Brabb Lumber Co. v. Sackett, 147 Ky., 232. In the opinion in the latter case may be found an elaborate review of the authorities supporting the doctrine in question, and the conclusion expressed, that where one owns two or more tracts of disconnected land, the actual entry and adverse possession by another upon one of the tracts, although the entry be made under a deed that includes all of them in its boundaries, will not extend his actual possession to any of the others. If the intruder desires to hold all of them by adverse possession, he must do such act as to each, as will constitute adverse possession as to each particular tract, as each disconnected tract is to be treated as a separate disconnected boundary.

In the light of the foregoing authorities we must hold that the instruction, in the particular indicated, was erroneous and necessarily prejudicial to the appellants. Indeed, but for this feature of the instruction the jury could not have done otherwise than find for appellants, as in another part thereof they were expressly advised by the court that the eighteen-acre tract of land in controversy was not covered by the Lawson patent but was included within the boundary of the Clapp patent. It

is apparent, therefore, that the verdict in favor of appel-
lees was based solely upon the appellee, J. C. Lawson's,
claim of possession, the decision of which was erro-
neously submitted to the jury by the instruction. There
was no evidence whatever that the appellee, J. C. Law-
son, or any of his vendors, ever had actual possession
of the eighteen-acre tract of land in controversy. The
eighteen-acre tract is uninclosed woodland and the ap-
pellee, J. C. Lawson, resides, as did his vendors, upon the
Mary Miller land, a disconnected fifty-acre tract, which
is separated from the eighteen-acre tract by the Lawson
fifty-acre patent. His claim of possession, to the eight-
een-acre tract, therefore, rests wholly upon the alleged
fact that it is within the boundary of the Lawson patent,
of which he has never had actual possession. So, as
previously stated, he cannot recover the eighteen-acre
tract upon the ground of adverse possession, but if he
does so at all it must be by reason of his superior title,
because it is covered by the Lawson patent, which is an
older grant than the Clapp patent under which appellants
assert title to the eighteen-acre tract.

As the case must again be tried, we withhold any ex-
pression of opinion as to the merits of the controversy,
but much of the evidence sustains the location of the
Lawson patent as claimed by appellants, and, as it seems
to have been established by the trial court in the order
entered of record after the introduction of all the evi-
dence; which boundary is as follows: "Beginning at the
white oak, the fourth corner of the Mary Miller survey
at the point marked '1' on the map introduced in evi-
dence by the plaintiff and identified as 'J. R. J. No. 2';
thence to the point marked '2' and 'W. O.' on said
map; thence to a point marked '3' and 'Bl. O' on said
map; thence to the point marked 'H' on said map;
thence to the point marked '5' and 'Hick and W. O.';
thence to the point marked '6' and 'Ash,'; thence to
the point marked '7' and 'Red O.'; thence to the point
marked '8' and 'Dwd'; thence to the point marked
'9' and 'Bl. O'; thence to the point marked '10' and
'W. O. and beech'; thence with the line of the Mary
Miller survey to the point marked '11'; thence with
another line of said Miller survey to the point marked
'1' the beginning."

If this be the correct location of the Lawson fifty-
acre patent, it does not, according to appellants' evi-
dence, include any part of the land in controversy and

fixes the line of the Lawson patent from "H" to "5", and "Hick and W. O.", as the south line of the land in controversy. Appellants' evidence further conduced to prove that this location of the lines of the Lawson patent is as they were established by the first surveys thereof and as Hiram Lawson, the first grantee of the patentee, William Lawson, claimed them. This location of the Lawson patent is shown by the subjoined map:

Appellees' evidence, and especially the testimony of their surveyor, Jones, conduced to show that the eighteen-acre tract of land in controversy is within the boundary of the Lawson fifty-acre patent, and that, in order to correctly establish the lines of the Lawson patent, it is necessary to follow, as Jones did in the surveying done by him, the calls of the patent to the black oak corner, the last corner before the beech and white oak beginning corner of the Mary Miller survey and that, instead of the line N. 61. E. 32 poles, should be adopted a line S. 9 E. 389 poles to the undisputed location of the white oak and beech called for. It appears, however, from the evidence of appellants that in thus conducting the survey Jones did not run out a 404 pole call on its actual course, or examine to see whether the white oak and hickory, or the ash, dogwood and black oak, could be found on Roses Creek as called for. It is insisted for appellants, and shown by the testimony of numerous

witnesses, that to locate the Lawson patent as claimed by appellees and as the lines thereof were established by the surveying of Jones, would make it embrace 303, instead of fifty acres, the quantity designated therein.

It is, however, contended by appellees that even if the boundary of the Lawson patent, as claimed by appellants and fixed by the court, be accepted as the true boundary thereof, it still includes a part, if not all, of the eighteen-acre tract in controversy, and reference is made to certain evidence contained in the record which it is asserted sustains this claim. Be this as it may, it is patent that there was a contrariety of evidence as to the proper location of the lines of the Lawson patent; and this being so, the location of its lines should have been left to the jury.

One of the earlier cases in which was announced the principle that required the submission of this case to the jury on the question indicated, is that of Cockrill v. McQuinn, 4 T. B. Mon., 63, in which the court said: "In cases of boundary which depend upon the swearing of witnesses, it would, no doubt, be incompetent for the court, by any sort of instructions that might be given, to withdraw from the jury a decision upon the weight of the testimony and the facts, which the testimony conduces to establish. The actual position and identity of a boundary in such a case would be exclusively a question of fact for the consideration and determination of the jury, and not the court." To the same effect are the following later cases, decided by this court: Whitehouse Cannel Coal Co. v. Wells, 25 Rep., 60; Morgan v. Renfro, 124 Ky., 314; Ramsey v. Morrow, 133 Ky., 486; Middlesborough Town & Lands Co. v. Hurst, 148 Ky., 316.

Appellants contend that the court made no mistake in itself determining the boundary of the Lawson patent, or in telling the jury in the instruction quoted in the opinion, that it is not included in the Lawson patent but is covered by the Clapp patent, and in support of this contention cite three cases, in each of which it is claimed this court approved the action of the circuit court in locating the disputed boundary, instead of leaving its location to the determination of the jury trying the case.

In the first of these cases, Berry v. Evans, 28 Rep., 22, the trial court established a division line, according to the respective calls of the two patents, but instructed the jury that they were not bound to find for the plaintiff because of the court's location of the line, if they believed from the evidence that the respective owners,

being in doubt as to where the true line was situated, had established a different line by agreement, and that the defendant, and his vendor, had occupied the disputed territory continuously, openly and notoriously, claiming it as their own to a well defined boundary in such a way as to give notice of their adverse holding, for fifteen years next before the institution of the action, as in the latter event, they should find for the defendant.

In the second case, Kerr v. Delaney, et al., 28 Rep., 1140, it was held that, in establishing the boundary of a tract of land, where it is manifest that a line has been omitted, and the undisputed calls enable this mistake to be corrected, it is the duty of the court to make the correction; and further, that though, ordinarily, the question of the location of a disputed patent is one for the jury, if the trial be at law, yet where certain principles of law are to be enforced with reference to a dispute which, when applied, leaves no question as to which a contrariety of opinion should reasonably exist, the court should enforce them by a peremptory instruction.

In the third case, Bryant v. Strunk, 151 Ky., 97, it was, in effect, held that, when there is no conflict in the evidence, the location of a patent is a question of law for the court.

These three cases cannot have a controlling effect in this case, for here, as we have seen, there was a contrariety of evidence as to the true location of the lines of the Lawson fifty-acre patent. It is true, that the error of the trial court, in locating the lines of that patent and in instructing the jury, that they include the lands in controversy, being unduly favorable to appellants, will not authorize the reversal of the judgment appealed from, but, as a reversal must result because of the error of the trial court in submitting to the jury under the same instruction the question of adverse possession, the court should, on another trial of the case, under a proper instruction, leave to the jury the duty of determining from the evidence the boundary of the Lawson fifty-acre patent; and also the further question as to whether the eighteen-acre tract in controversy is included within the boundary thereof. But on such trial there should be no instruction given on the question of adverse possession, unless additional evidence conducing to prove such possession should be introduced by appellees.

For the reasons indicated, the judgment is reversed and cause remanded for a new trial consistent with the opinion.