## Louisville Cooperage Company v. Collins, et al.

(Decided February 9, 1926.)

## Appeal from Letcher Circuit Court.

1. New Trial—Introduction of Patent, Invalidating One on which Defense had Depended, Held to Constitute Surprise Warranting New Trial.—In action for removal of timber involving title to land, introduction at trial of early patent affecting validity of patent under which defendants claimed, and of which defendants had no notice, held to constitute surprise entitling defendants to new trial.

2. New Trial—Defendants Held Not Required to Take Constructive Notice of Patent Under Which no One Claimed.—Defendants, in action for removal of timber involving title to land, claiming under patent issued in 1846, held not required to take constructive notice of patent issued in 1776, covering same land, where neither party claimed title under it, and no one was in possession under it.

3. Adverse Possession—Extent of Title by Adverse Possession Under Color of Title Stated.—Where one claiming under color of title is in actual possession of part of land within well-defined boundary, law, by construction, carries possession to full extent of boundary, except as against actual adverse possession, and except that as against superior title, rule will not prevail unless entry and possession be upon the interference.

4. Trial—Instruction as to Adverse Possession Held Improper Without Defining Extent of Possession.—In action involving title to land, where there was no evidence that plaintiffs had fenced and lived on land involved, instruction that plaintiffs were entitled to verdict if they had been in adverse possession of land for 15 years, "having same under fence and living upon same," held error, in absence of instruction defining extent of possession.

O'REAR, FOWLER & WALLACE, J. WOODWARD, HOWARD and FIELDS, DAY & FIELDS for appellants.

R. MONROE FIELDS, JOHN D. CARROLL and JOHN S. CARROLL for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

W. B. Collins and wife brought this suit against the Louisville Cooperage Company, Polly Ann Lusk, John Banks and Nat Williams, alleging in their petition that they were the owners and in actual possession of a tract of land in Letcher county, described in the petition, and that the defendants had entered upon the land without right and cut down and removed therefrom a large amount of timber. The defendants by their answer denied that the plaintiffs were the owners or in posses-

sion of the land from which the timber was cut. They alleged that Polly Ann Lusk was the owner of the body of land described in the answer and that the timber was cut from her land. The only evidence of title which the plaintiffs produced on the trial was a deed made to them on October 26, 1903, by W. B. Collins' father and mother, and W. B. Collins testified that he had settled on the land seven or eight years before this and had since lived on it, claiming the land by adverse possession to the extent of the boundary in the deed. The only evidence of title the defendants introduced was a deed made to Polly Ann Lusk on May 9, 1916, by the widow and children of her father, John W. Lusk, deceased, and she showed by the evidence that the land in controversy was within her deed. The jury found for the plaintiffs in the sum of $2,000.00. The defendants appeal.

As the plaintiffs showed no title from the Commonwealth their whole right to recover rests upon adverse possession. The land was uninclosed and in timber and the first question in the case was as to the location of the lines of their deed. The controversy is illustrated in the following map:

Beginning at a point which is undisputed the calls of Collins' deed run to the point marked 1 on the map. Then these calls follow: Thence a straight line to a corner of a 400-acre survey made in the name of Allen Christian; thence with said line to the top of the hill between Limefork and Kentucky river; thence around the top of said hill to the dividing spur between Calvin Collins and Letcher Collins and down said spur to Kentucky river and on a sycamore." The corner of the Allen Christian 400-acre survey is a 2 on the map and the west end of it is shown by lines 5, 9, 8, 2, 6, 10 and 7. The defendants claim that Collins' line should run from 2 to 8 with the lines of this survey to the spur and thence with the spur back to the river. On the other hand, he claims that he does not stop at the corner of the Allen Christian survey, but runs straight ahead to the top of the divide between the Kentucky river and Limefork at 3, and then with the top of the ridge to the spur between Letcher Collins and Calvin Collins at 4, thence down the spur to the river. If his line is so run, as will be seen from the map, he runs directly across the Allen Christian survey and a part of his land lies on each side of this survey and a part within it. He does not connect in any way with the Allen Christian patent, so in the survey made under the order of court preparatory to the trial of this case the Allen Christian survey was located and the defendants went into trial supposing that the location of this survey was conclusive of the location of plaintiffs' deed, as they had no title from Allen Christian. On the trial of the case, to get around this difficulty, the plaintiffs introduced in evidence a patent issued to James Colquhoun of date December 23, 1796, containing 3,285 acres by survey and introduced proof showing that this patent included all of the Christian 400-acre patent, which was made on March 6, 1846. If this was true, the Christian patent was void, and being void, unless there had been a settlement made under it, the lines of plaintiffs' deed might properly include land within that patent. When this proof was introduced the plaintiffs at once moved the court to set aside the order swearing the jury and continue the case on the ground of surprise by the course taken by the plaintiffs on the ground that they had prepared the case without any notice of this older patent and understanding that the plaintiffs contended that the Allen Christian 400-acre survey extended to the top of the ridge between

Limefork and the Kentucky river, and they were confirmed in this belief by the action of the surveyor who made a survey for the plaintiffs on the land and the fact that the plaintiffs did not claim adverse possession except to and with the line of the Allen Christian 400-acre survey; that plaintiffs and those under whom they claimed had never cleared nor fenced any land within the Christian survey and they had no notice that plaintiffs claimed any land beyond the line of that survey, and they were taken by surprise by the evidence introduced on the trial; that they could show if given an opportunity that Allen Christian and those claiming under him had settled upon his survey and held it for many years and were in such possession when plaintiffs and those under whom they claimed entered on their land outside of this survey and making no claim to it. The court refused to continue the case. Upon the whole record we are satisfied that there was here a clear case of surprise and that the ends of justice require a new trial and an opportunity for the defendants to meet the situation brought about by the introduction of the old patent issued in 1796, which apparently none of the parties knew anything about until recently. The defense as prepared rested upon the validity of the Christian 400-acre survey. The defendants had no notice that its validity was attacked. The plaintiffs' title did not connect with the older patent. A state of case was presented which ordinary diligence would not be expected to anticipate, as defendants did not claim under the older patent and were not required to take constructive notice of it, there being no one in possession under it.

The defendants complain that the court refused to allow them to prove the adverse possession of the land by John Lusk and those claiming under him. There seems to have been a misunderstanding between counsel and the court on this subject. The court seems to have meant only that they should first introduce the deed describing the land and then introduce the evidence as to possession of it, but counsel seems to have misunderstood the court. On another trial the court will allow the evidence to be given as to the location of the farm of John Lusk under whom Polly Ann Lusk holds and the extent of the possession of those occupying the farm and how far back it

has extended. The law as to the extent of possession under a deed is this:

"The rule is that where one claims under color of title and is in actual possession of a part of the land within his well defined boundary, the law, by construction, carries his possession to full extent of his boundary, except that as against actual adverse possession this rule will not prevail and except that as against superior title this rule will not prevail unless the entry and possession be upon the interference." Ramsey v. Hughes, 212 Ky. 715.

The court gave the jury this instruction:

"The court instructs the jury that if they believe from the evidence that the plaintiffs, for a period of fifteen years or more next preceding the institution of this suit, have been in the actual, open, notorious, continuous, adverse and peaceable possession of the land set out and described in the petition and referred to in the evidence, to a well marked and defined boundary, by having same under fence or by living upon same, and further believe that the defendants, without plaintiffs' consent and against their will, entered upon said land and cut and removed timber of value therefrom, you will find for the plaintiffs."

This instruction is entirely proper in a case where there is proof that the party was in adverse possession of the land "to a well marked and defined boundary by having same under fence or living upon same." But there was no proof in this case that Collins had the land in controversy under fence or lived upon it. To submit the case to the jury under such an instruction without an instruction defining the extent of possession is to submit to the jury both the law and the facts of the case. On another trial the court will instruct the jury on the extent of possession under the facts as shown by the evidence. Morgan v. Mosely, 206 Ky. 72; Kentucky Union v. Heavner, 210 Ky. 121; Ramsey v. Hughes, 212 Ky. 715.

If the plaintiffs' possession did not include the land within the Christian patent indicated on the map by the lines 2, 6, 10 and 8, then their possession did not extend to the land lying south of the line 6 and 10, from which the timber was cut. Their residence was near the point

11 and their clearing was north of the lines 2 and 8, unless there was one acre beyond this line, and as to this the proof rather indicates that the intention was only to clear up to this line.

Judgment reversed and cause remanded for a new trial.