## Louisville Cooperage Company v. Collins et ux.

(Decided March 5, 1929.)

BAILEY P. WOOTTON and D. I. DAY for appellant.

R. MONROE FIELDS and JOHN S. CARROLL for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

When this case was here before, neither party showed title from the commonwealth. Louisville Cooperage Co. v. Collins, 212 Ky. 819, 280 S. W. 137. On the return of the case to the circuit court, it was tried again,

but on wholly different proof. Each party showed title from the commonwealth, W. B. Collins, the plaintiff, showed title to the land under the patent to Allen Christian, issued in 1844, in this way:

After Allen Christian's death, his lands were divided between his widow and his kindred, and a certain body of land was conveyed to the widow, Margaret Christian, who was a sister of Calvin Collins. After her death the land was divided between her kindred, and a certain part of her land was conveyed on August 3, 1896, to Calvin Collins, and he, on October 26, 1903, conveyed the land to W. B. Collins. There was a survey made of the land when the original division was made some years before the conveyance to Margaret Christian in 1896. After her death, another survey was made when her land was divided in 1903. Polly Ann Lusk produced two patents issued to her father and showed that he and those he claimed under had been in possession of his land for over 70 years, claiming to the line of the Allen Christian patent. His patents also called for these lines. So the proper location of the Allen Christian patent is the real question left in the case. The situation is roughly shown on the following plot:

The beginning corner of the patent, which is undisputed, is at 1; thence it runs with the lines marked 1, 2,

3, 4, 5, 6, 7, 8, 9. The lines then are undisputed until the twenty-fourth corner of the patent is reached. Here a dogwood tree is called for in the patent. The dogwood is gone, but its location is proved and there is no contrary evidence. But from the twenty-fourth corner to the beginning the patent calls for stakes, giving courses and distances. If the patent is run from the twenty-fourth corner, by its calls you do not reach the beginning corner, and the lines have to be extended to do this. On the other hand, if you go back to the beginning corner and reverse the calls, there is the same difficulty. The disputes hinges on the south line of the patent, which covers a large body of land lying east and south of the figure shown on the map. Collins claims that the south line of the patent should be located as shown by the line 34, 35, 36, and he introduced two surveyors proving that this was the proper location of the line under the calls of the patent. On the other hand, the defendant showed by two surveyors that the proper way to locate the patent was to go to the beginning corner and reverse the calls of the patent and that the south line of the patent was as shown by the lines A, B. C. A large amount of proof was taken as to marks on the lines, but at the conclusion of all the evidence the court peremptorily instructed the jury that the line marked D. E. F, was the south line of the patent. The jury found for the plaintiff in the sum of $900. The defendants appeal, and the plaintiff has taken a cross-appeal.

It is true that, where there is nothing to indicate where the error lies, a mere question of law is presented as to how the patent was in fact located, and the court has in a number of cases held, where this is the case, what rule should be applied. Louisville Property Co. v. Rose, 184 Ky. 226, 211 S. W. 743, and cases cited. On the other hand, the rule is well settled that if there is any evidence the question is for the jury, and the location of the patent must be determined by the jury. Cockrell v. McQuinn, 4 T. B. Mon. 63; Louisville Property Co. v. Lawson, 156 Ky. 294, 160 S. W. 1034, and cases cited. The actual location of the survey controls.

"It will be presumed that the county surveyor, a public official, has performed his duty in that respect, and that when he designates a corner as being at a stake, some such object was actually placed at the point indicated. Such temporary objects, though placed as required, could not long endure, and will in a short time be-

come lost. So, for that matter, marked trees may be destroyed, and such corners be lost. In all such cases, where it comes to locate again the survey so made, the object is to reproduce if possible, or as near as may be, what was originally done in appropriating the land by the survey." Morgan v. Renfro, 124 Ky. 320, 99 S. W. 313, 30 Ky. Law Rep. 533.

In that case, after saying that the lines may be run from the established corners, according to the calls of the survey, the court added this: "But, if the courses and distances thus run do not close the survey, it must be accomplished by running the same courses, and either lengthening or shortening the distances, as each case may require, and in proportion to the length of each line, as called for in the plat and certificate of the survey. And, if the survey cannot be made to close by this means, then, and not otherwise, a deviation from the courses called for must also aid in accomplishing the purpose." Page 322 of 124 Ky. (99 S. W. 314). To same effect, see Combs v. Griffiths, 194 Ky. 91, 238 S. W. 165, and cases cited.

This, like other rules for locating lines by course and distance, only applies where there is no other evidence showing the location of the lines, and where there is such evidence the question is for the jury on all the evidence. It may be presumed that the patentee knew the location of his lines, and well-marked lines long recognized by him or those claiming under him are to be considered with the other evidence by the jury. "When the parties to this transaction are dead, the actual location of the lines by them soon after they were made is the best evidence of the true location, when this location was acquiesced in until all of that generation had passed away." Wand v. Corbin, 107 S. W. page 755, 32 Ky. Law Rep. 958. To same effect, see Ross Wetzell & Co. v. Mountain Oil Co., 141 Ky. 411, 132 S. W. 1040; Taylor & Crate v. Forester, 148 Ky. 201, 146 S. W. 428; Ky. Union Co. v. Shepherd, 192 Ky. 455, 234 S. W. 10.

The defendants showed by a number of witnesses that the lines A, B, C, were plainly marked and were old marked lines. They showed by one witness that Allen Christian pointed out this as his line and recognized it. They showed by a number of witnesses that in the survey of the land, for the purpose of division after his death, this line was recognized and was then run as the line of the patent. They showed the same facts as to the survey and division made after the death of his wife. They

showed by a number of witnesses that W. B. Collins, the plaintiff, time and again recognized this marked line as his line.

Under the evidence the court should have told the jury that they should under all the evidence determine the location of the lines of the Allen Christian survey, which were in controversy, and by their verdict indicate the location of the lines as so found by them on one of the plots in evidence; that if they believe from the evidence the defendants had cut any timber over these lines and within that patent as thus located, they should find for the plaintiff the fair and reasonable market value at that time of the timber so cut, not exceeding $10,000, and if they did not so believe from the evidence they should find for the defendant. The court should also have given the jury this instruction: "The court instructs the jury that in the absence of any facts tending to a contrary conclusion distance yields to course, and the distances must be shortened or extended in proportion to the length of each line as the case may require, to make the survey close. The beginning corner of a survey is of no higher dignity than any other corner equally well established. Reversing the courses is as proper as following the order given in the certificate. Where the lines and corners of a survey are found actually marked on the ground, although they may vary from the courses and distances described in the survey, yet if they are sufficiently identified they constitute the true boundaries of the land described in the patent; and although they may have been defaced or destroyed, if the true position can be ascertained by oral testimony the courses and distances must yield to them. If there is between the two established corners, of the survey a marked line which the jury find to be the true location of a line of the survey, then the survey should be closed by running to this line from the last established corner according to the calls of the survey and from the beginning corner to this line according to the calls of the survey reversed, extending or shortening the lines proportionately to close the survey. The true location of the lines in controversy is to be determined by the jury under all the evidence heard in the case, and if there is no marked line anywhere between the two established corners which the jury find to be the location of a line of the patent; then in the absence of other evidence showing the actual location of the lines, the survey should be closed by running the lines from the

established corners on the course given in the survey and by extending or shortening them proportionately as may be necessary to close the survey.''

Neither of the parties made any entry upon the land in dispute. All the Collins' clearings or inclosures were on land not in controversy. While he was living on his tract, John Lusk was living on the tract on the other side of the ridge, and neither of them acquired any title by adverse possession to any part of the land in controversy. The circuit court therefore properly refused to give any instruction on adverse possession under the evidence. Collins has no title beyond the Christian patent. Though he took possession within the patent, this only extended his possession to its outside boundary. There is no evidence that the line D, E, F, is marked, and no evidence that any one until recently ever claimed the line 34, 35, 36, as a line of the patent.

The question of the location of the patent was improperly taken from the jury; the judgment is reversed on the original and on the cross appeal. The appellant will recover cost on the appeal. The appellees will recover cost on the cross-appeal.