## New Era Land Company v. Childs.

(Decided December 15, 1914.)

### Appeal from Jackson Circuit Court.

Patents.—The original survey and accompanying plat is potent evidence in determining the proper location of the patent issued on the survey and will control the courses and distances in the calls of the patent where the subsequent acts of the parties show this to be the true location of the patent.

HARRISON & HARRISON and R. L. LLEWELLYN for appellant.

A. W. BAKER and W. E. BEGLEY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

The only question to be determined on this appeal is the proper location of a patent for 100 acres of land issued by the State to Jacob Hughes, August 6, 1856 on a survey bearing date of September 17, 1855. The calls of the patent are as follows:

Beginning at two chestnuts and poplar trees on the county line between Owsley and Estill, thence S. 44 E. 14 poles to two hickories and black oak; thence N. 48 E. 29 poles to a spotted oak in a line of J. Hughes; thence N. 83 E. 56 poles to a pine, spotted oak and black gum; thence N. 46 E. 14 poles N. 36 E. 24 poles; thence N. 48 E. 30 poles to three chestnuts and spotted oak and corner to Joseph Seal and John Anglin; thence S. 86 E. 60 poles; thence N. 7 E. 68 poles to a forked hickory and two white oaks; thence N. 39½ W. 245 poles; thence W. 70 poles; thence S. 30 E. 215 poles; thence S. 72 E. 34 poles to a pine, same course continued in all 88 poles to

a forked hickory and two white oaks; thence N. 60 W. 217 poles; thence N. 30 W. 62 poles; thence S. 9½ E. 78 poles; thence S. 61 E. 86 poles to the beginning, excluding 20 acres prior claim.

The survey and plat accompanying it are as follows:

Scale 100 poles per inch.

"September 17, 1855, surveyed for Jacob Hughes 100 acres of land assee, of William McJunkin by virtue —— a land warrant which issued from the Clerk's Office of said county situate and being in Owsley County on the Dry fork of Wild Dog Creek, waters of Sturgeon Creek and waters of the Kentucky River and bounded as followeth to-wit: Beginning at A two Chestnuts and Poplar trees on the County line between Owsley and Estil; thence S. 44 E. 14 poles to B. two Hickories and Black Oak; thence N. 48 E. 29 poles to C. a Spotted Oak

in a line of J. Hughes; thence N. 83 E. 56 poles to D. a Pine, Spotted Oak and Black Gum; thence N. 46 E. 14 poles to E.; thence N. 36 E. 24 poles to F.; thence N. 48 E. 30 poles to G. three Chestnuts and Spotted Oak trees and corner to Joseph Seal and John Anglin; thence S. 86 E. 60 poles to H.; thence N. 7 E. 68 poles to I. a forked Hickory and 2 White Oaks; thence N. 39½ W. 245 poles to J.; thence West 70 poles to K.; thence S. 30 E. 215 poles to L.; thence S. 72 E. 34 poles to M. a Pine, same course continued in all 88 poles to I. a forke Hickory and two White Oaks; thence N. 60 W. 217 poles to O.; thence N. 30 W. 62 poles to P.; thence S. 9½ E. 78 poles to Q.; thence S. 61 E. 86 poles to A. The beginning 20 acres of this Plat and certificate is on Jacob Hughs Land which was granted to Dudly Hill.''

As located by three surveyors the patent covers some thing over 300 acres of land and is platted as follows:

Scale 40 poles per inch.

This plat is made on a scale of 40 poles to the inch; the other on a scale of 100 poles to the inch, but they serve to show the difference in the shape of the tract of land under the two locations of the patent.

The line A., B., C., D., E., F., G. is the same on the two plats; also the lines I., O., P., Q., A. The difference is that in the plat accompanying the original survey the corner "a forked hickory and two white oaks" in the 9th and 13th calls is placed at the same point, I.; but in the location of the patent as made by the three surveyors the 13th corner is located at I.; but the 9th corner is located at another point (9 on plat), nearly three-quarters of a mile from I. The appellant who was plaintiff below insists on the location of the patent as shown on the plat accompanying the original survey; the appellees who were the defendants below insist the patent was properly located by the three surveyors. The circuit court having adopted the latter location of the patent this appeal followed; the thing directly in controversy being the land on the north end of the patent. It will be observed that the location of the patent as established by the judgment of the circuit court gives the tract of land covered by the patent an entirely different shape from that shown by the surveyor's plat accompanying the original survey, and makes it contain about three times the quantity of land called for by the survey. The difference between the two locations, is that the surveyors followed the courses and distances called for in the patent running from G. to 8 and from 8 to 9 on the surveyor's plat, instead of disregarding the courses and distances called for and running from G. to I. as shown in the plat accompanying the original survey. While the surveyors followed the courses and distances of the patent in running from G. to 8 and 8 to 9 they had to disregard other calls of the patent to make a close. At the time the survey was made Jacob Hughes owned the Dudly Hill survey and was living upon it. The forked hickory and two white oaks at I., were a well-known corner of that survey. The line from I. to 12 and 12 to 11 on the surveyor's plat were all known lines of that survey; the line from B. to G. crossed that survey and cut off about 20 acres of it. That the surveyor who made the original survey, located the forked hickory and two white oaks called for in the 9th and 13th calls of the survey at the same point, there can be no question; for he begins at A. on his plat and runs to B.; thence to C.

to D. to E. to F. to G. to H. to I. to J. to K. to L. to I. to
O. to P. to Q. to A. This is shown, not only by the lines
on the plat, but also by the lettering, for he begins with
A. and proceeds alphabetically until he reaches M., then
he goes to I., then to O., P., Q., &c. What he meant is
unmistakable; the pine at M. is called for in the Dudly
Hill survey and that he was endeavoring to follow the
lines of that survey is evident. In Mercer v. Bate, 4 J.
J. Marshall, 334, the court said:

"The original plat is not only admissible as evidence
but it is intrinsically one of the most potent facts which
can be adduced and hence it has often been admitted by
the court as always either preponderating or alone con-
clusive.

To the same effect see Patrick v. Spradlin, 19 R.,
1038; Bell Co. Land Co. v. Hendrickson, 14 R., 371, Hogg
v. Lash, 120 Ky., 419; Daniels v. New Era Land Co., 137
Ky., 535; Bryant v. Struck 151 Ky., 97.

About two years after the Jacob Hughes survey was
made, Barton Potter made a 200-acre survey adjoining
it, this survey being made by the same surveyor who had
made the Hughes survey, and Hughes, who was then liv-
ing on the Dudly Hill tract, was one of the chain car-
riers. The Potter survey runs with the line from I. to
J. on the plat accompanying the original survey, that is,
with a line running from I. parallel with the line from
12 to 11 on the surveyor's plat. To locate the Hughes
survey as located by the surveyors, it will include about
half of the Barton Potter survey, and it is incredible
that the same surveyor, making the two surveys so
close together, could have overlooked the location of the
previous survey, or that Hughes, who was one of the
chain carriers, in the latter survey, could have been
ignorant of the location of his line, and not have known
that Potter was taking up 100 acres of his land. It is
also unreasonable that a surveyor in running out a
survey of 100 acres of land, made a mistake so that the
boundary located, lay in a wholly different shape from
what he supposed, and contained 300 acres, instead of
100 acres. In addition to this, Jacob Hughes, shortly
thereafter, made a survey, the same surveyor doing the
surveying, under which he obtained a patent for eight
acres lying in a triangular shape between the points
G., I. and I., 12. This land was all included in his pre-
vious survey if that survey was located as adjduged by
the lower court, and it is incredible that he made a sur-

vey of 8 acres within his larger survey of 100 acres to which he already had a perfect title. The evidence is also persuasive that Hughes recognized the line from I. to J. on the plat accompanying the original survey and never held beyond that line. The evidence that the line from G. to 8, from 8 to 9, from 9 to 10, from 10 to 11 was ever marked or recognized is very unsatisfactory. There is some evidence that a marked white oak was found at 9, but there is no evidence that there was ever at that point a forked hickory and two white oaks, or that this point was ever recognized as a corner by Hughes or his son who held the land after him, or Lunsford, who held the land after him. We, therefore, conclude that the patent must be located by running from G. to I. with the line of Hughes' 8-acre survey, as this seems to be the location of the patent as adopted by the parties themselves when that survey was made. It not infrequently happens that in writing out the calls of a survey, by a clerical error N. is used for S., or E. for W., or *vice versa*. To illustrate: there are two office copies of the original survey in this record and in each of them there is a clerical error of the kind. In the copy of the patent regularly certified, there are two clerical errors. While there are clerical errors in the report of the original survey, when the words written are read in the light of the accompanying map, no doubt of what it means as a whole can be entertained.

The judgment in the case of English v. Childs which was pleaded in bar of this action is not conclusive here for the reason that Sarah Childs, the owner of the land, was not a party to that action.

Judgment reversed and cause remanded for a judgment locating the patent as above indicated.