## Louisville Property Company v. Rose.

(Decided May 9, 1919.)

### Appeal from Whitley Circuit Court.

1. Boundaries—Description of Land—Patents—Evidence.—Whenever an error is shown to exist in the description of the land as given in the patent, whether from the patent itself or competent extraneous evidence, both the certificate of survey and plat filed therewith, upon which the patent issued, are competent as evidence and of equal dignity, in determining the true location of the patent, and the one or the other will be accepted as the correct description, depending upon all of the evidence.

2. Boundaries—Location of Patent.—The course of a line as laid down upon the plat, rather than as described in the patent and certificate of survey, must be accepted as the correct line when to do so locates the patent so as to include the dwelling house erected by the owner many years ago and the bottom land along a creek which interested parties have always believed to be included, whereas to run the line according to the call of the patent and certificate of survey locates it away from the creek where no one ever claimed it ran, and locates the owner's dwelling outside the patent, and upon land he did not own.

3. Boundaries—Location of Corners.—To locate a lost or unknown corner between two known or established corners, there being nothing to indicate where the error lies, the two called for lines

should be extended from the known corners until they meet, their intersection being the corner.

STEPHENS & STEELEY for appellant.

L. L. LAWSON and POPE & ROSE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Appellee started to construct a wire fence upon what he claimed to be the division line between his and appellant's lands, whereupon appellant claiming the fence was not upon the division line, but inclosed about twenty-seven acres of its land, brought this suit to enjoin appellee from trespassing upon its land. Appellant claims the land in controversy both under patent and by adverse possession for the statutory limitation period, while appellee claims it under a senior patent.

Upon the question of the claimed adverse possession of appellant it is sufficient to say that even considering such possession as is proven was adverse, an issue in much doubt, there is such grave doubt of the possession having been continuous for the statutory fifteen years next before the institution of this action, that we must accept the chancellor's finding upon this question of fact. Upon the question of title by grant, it is agreed appellant owns the Bennett patent, issued in 1883 for 100 acres, which covers the land in controversy, and that appellee owns the Lee patent for 150 acres issued in 1839. The controversy is whether the latter patent includes the land, for if it does, being the senior patent, appellee has the better title, but if not, then appellee has no title thereto, and appellant owns the land under the Bennett patent; so the question for decision is the correct location of the Lee patent.

The original survey seems to have been actually located upon the ground up to and including the tenth corner, a beech, but the two remaining lines were not so located. All of the trees designated as corners had been removed many years before this controversy arose and the parol evidence as to the location of the tenth corner, a beech, is too indefinite and unsatisfactory to control, since its location as claimed by appellee, at 10A on the map, is predicated almost entirely upon what Henry Rose, the father of appellee, and who lived on the Lee patent for about 40 years, is alleged to have said to others about it, yet he, when on the stand, testified he

never saw it and refused to fix its location with any certainty, saying: "Well, I don't know where it stood; about the best information I could get is that it stood up the creek above where I live." So we must look to a survey of the patent for the location of this tenth corner. There is some criticism by counsel for appellee of the extension of the third line made by appellant's surveyors from the 56 poles called for to 74 poles, but this extension was demanded by the description of the line in the patent which is "thence S. 13 E. 56 poles to a double buckeye on the bank of said creek" (Big Poplar creek), since only by so extending it does it reach the bank of the creek; so, the buckeye being gone, this location on the bank of the creek reached by extending the course must be accepted as correct, under the well known rule that courses and distances give way to known objects called for. When this is done there is no trouble in locating the fourth and fifth lines, but one of the vital questions in this controversy is the location of the sixth line described in the original survey and the patent: "thence N. 55 E. 30 poles to an elm." There is no elm, nor evidence of where it stood, and the plat filed with the survey upon which the patent issued, shows this line as being *"South 55 E. 30 poles"* rather than *"North 55 E. 30 poles."* To locate the line as described in the original survey and patent, locates the tenth corner, a beech, at 10A on the map as claimed by appellee, while to locate this sixth line as laid down on the original plat filed with the survey upon which the patent issued, locates the beech called for at the tenth corner as claimed by appellant, since the intervening seventh, eighth and ninth lines must be run according to called for courses and distances under either contention. That the call in the original survey and patent was erroneously transcribed as *North* 55 E. instead of *South* 55 E. is asserted by appellant; and in support of this contention the following evidences are offered:

(1) The plat accompanying the original survey upon which the patent issued, shows the line to the South 55 E.; (2) the line if surveyed South 55 E. locates the lines intervening between the sixth and tenth corners, near the banks of Poplar creek and includes the bottom lands adjacent thereto, always and now considered by interested parties as within the patent while if surveyed North 55 E. the intervening lines are located away from the

creek, near the foot of the mountain, and the bottom lands are excluded; (3) the survey and patent in describing the fifth line begin: "thence up the creek," &c.; (4) the dwelling house constructed by Henry Rose many years ago when he owned this patent, and when the called for marked trees or some of them were probably standing or their location accurately remembered and known by himself and many others, was located by him outside its lines and on land he did not own, if the sixth line is North 55 E.; while if its proper location is South 55 E., he built his home on his own land, and (5) to locate the line South 55 E. makes the acreage more nearly correspond to the amount called for.

In opposition to these circumstances, which, if they be considered, seem to us quite conclusive that the lines as originally located followed close by the creek and included the land where Henry Rose built his home and the adjacent valuable agricultural lands, appellee relies solely upon a rule of evidence which he insists has been established by this court with reference to locating patents, in effect that the original plat can be accorded controlling weight as evidence of the proper location of the lines of a patent, only if there is a mistake in the face of the patent, as where a line has been omitted or the survey can not be made to close, but that where the certificate of survey and patent are in accord and the description thus given in both will close under the ordinary rules of surveying, the plat being outnumbered two to one, must give way and can not be used to vary the terms of both the certificate of survey and patent. In support of this contention we are cited to Hall, et al. v. Pratt, et al., 142 Ky. 561, 134 S. W. 900. We were, however, in that case dealing with very different facts. None of the lines had ever been located on the land, and the *only* evidence of a mistake in the patent and certificate of survey was the plat; and, recognizing the rule that "the surveyor's certificate and plat may be looked to to correct an error in the patent calls," and that the certificate of urvey, the documentary evidences of what he did and dence of the true line, it was held that before the plat could control it must first appear that the mistake is in the patent as issued, and that "if nothing else appears in a 'call' patent—that is, one whose corners are all stakes, or all but one, or whose lines were not run out and marked at the time—except a discrepancy between the fig-

ure made by platting the patent calls and the surveyor's plat, it is not proof of a mistake in the patent.'' This does not mean of course if *something else* does appear even in a "call" patent, to show that there is an error copied from the certificate of survey, such as the omission of a line or other error that renders it impossible to close the survey, that the plat may not be resorted to to correct the error, if by so doing the boundary may be made to close. It is only when there is no other evidence, in the patent or extraneous thereto, except a difference between the plat and certificate of survey, of an error in the patent that the latter must prevail. To otherwise interpret the Pratt case would not only ignore its facts, but would also put it out of line with many cases it cites with approval.

Controlling weight has often been given to the plat by this court (where, however, no doubt "something else appeared" than merely the discrepancy between the survey and plat), upon the theory doubtless that the surveyor might have unconsciously made an error in transcribing his field notes of the courses, which he could not have easily carried into his plat without noticing the dissimilarity of the figure on the plat to the one he had laid on the ground and had in mind. Mercer v. Bate, 4 J. J. Mar. 340; Hogg v. Lusk, 120 Ky. 419; New Era Land Co. v. Childs, 161 Ky. 588, 171 S. W. 417; Hardaway v. Webb, 172 Ky. 589, and many other cases.

In the case at bar the lines and corners up to the tenth corner were actually located on the land by the surveyor, and whenever this has been done and a controversy arises as here, as to the true location of one or more of such lines, the effect is to relocate *his* location, and to do this resort is had first to natural objects described by him, and in the absence of such objects to contemporaneous construction of interested parties, reputation and information in the vicinity and among those having knowledge as to the actual location as made by the surveyor; and whenever upon such extraneous evidence as to the true location as originally made, it appears that there is an error in the patent, the plat or certificate of survey, the documentary evidences of what he did and being of equal dignity, since both are certificates made by the surveyor at the time of his location, may be looked to and that description accepted, whether in the survey or plat, that under all the proof is believed to accord with the location as originally made, if either accords

with the original location on the land as proven, but the original location if established must be accepted even though at variance with the called for courses and distances in all of these documents.

We are therefore of the opinion the tenth corner should be located at figure 10 on the map, as contended by appellant's surveyors, as such location accords with all the extraneous evidence of the original location actually made as well as the original plat; but we can not agree to their location of the tenth and eleventh lines, since they arbitrarily place all of the error in these two lines in the tenth, changing both its course and distance, in order to preserve both the course and distance in the last line. The approved method of running these lines and to locate the eleventh corner, which is an unknown or lost corner between two known or established corners, there being nothing to indicate where the error lies, is to extend the tenth line and the eleventh line reversed until they meet, their intersection being the eleventh corner. Chambers v. Thorp, 93 S. W. 627; Stacey v. Alexander, 143 Ky. 152, 136 S. W. 150.

Appellant's surveyors attempt to justify placing all the error in the tenth line upon parol evidence that the description of that line is indistinct in the recorded certificate of survey and may be N. 60 W. rather than N. 50 W. as in the patent, but in the certified copy of that certificate found in the record it is N. 50 W., and besides if it were N. 60 W. there would still remain an error in one or both of the lines, and we are of the opinion N. 50 W. is the description that must be accepted.

We therefore conclude upon all the evidence that the true location of the Lee patent necessitates a change of the course of the sixth line, from North 55 E. as described in the certificate of survey and the patent, to South 55 E. as laid down on the plat, and the location of the eleventh corner as above indicated.

Since the appellee was claiming title to and trespassing upon land within the Bennett tract and outside of the Lee patent, the court erred in dismissing appellant's petition, although the latter did not own all of the 27 acres in dispute.

Wherefore the judgment is reversed with directions to enter a judgment in conformity with this opinion.