## Kentucky Union Company v. Shepherd, et al.

### (Decided June 17, 1921.)

### Appeal from Perry Circuit Court.

1. Public Lands—Patents or Grants—Construction.—The primary purpose in construing patents is to locate them so as to include the same land as the parties intended at the time of the making of the survey and the issuance of the patent, and in doing so many rules are furnished by the law to guide the court in arriving at such intention; one of them is that where there are omitted calls or where the objects called for in the patent are not to be found, or where the patent, according to the courses, will not close, or where other facts develop uncertainty and ambiguity the court may resort to the plat made by the surveyor and filed in the land office, which under such circumstances is evidence of a potent character but is not necessarily conclusive. Like other evidence the plat, when the occasion exists to consult it, fills its place, but it rarely has the right to demand that all other evidence be wholly disregarded.

2. Public Lands—Patents or Grants—Boundaries.—It is competent, in locating patents, if necessary to close them, to extend a line, and especially so if that be necessary to reach a natural object called for in the patent.

3. Public Lands—Patents or Grants—Description.—Quantity and acreage stated in a patent may also be considered, but it ordinarily being a matter of description, is perhaps the weakest evidence to be resorted to and will surrender to other controlling facts, unless it manifestly appears that it was the intention of the parties to make the acreage a controlling factor.

4. Public Lands—Patents or Grants—Contemporaneous Construction.—It is also competent to introduce a contemporaneous construction of the parties and reputation acquired in the neighborhood and vicinity as to the location of the patent, and, within this rule, it is competent to introduce junior patents which refer to or border upon the senior patent which is the subject matter of construction for the purpose of showing the reputed location of the senior patent.

5. Public Lands—Patents and Grants—Calls.—From the facts in this case as appear from the opinion it is held that the court erred in reversing two of the calls of the patent and in reversing the meridian line of the surveyor for the purpose of obtaining a figure resembling in shape his plat, and when thus located it covered ground entirely different from that shown by the plat; the only error in the patent being the length of its last line to the beginning corner, and the acreage called for therein.

SAMUEL M. WILSON and WOOTTON & MORGAN for appellant.

C. H. BURTON, NICKELL & TYNES and D. D. FIELDS & DAY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, Kentucky Union Company, a corporation, was the plaintiff below, and the appellees, L. Shepherd and Swift Coal and Timber Company, a corporation, were the defendants below. The action was originally filed by plaintiff against defendant, Shepherd, to enjoin him from committing continuous trespasses upon the described tract of land in Perry county, Kentucky, containing 337 acres, 3 rods and 36 poles, which plaintiff claimed to own at the time of the filing of the petition and had owned since 1882. Afterwards by an amended petition the Swift Coal and Timber Company was made a defendant and the same relief was prayed as against it. The answers of each defendant denied plaintiff's title to about 161 acres of land described in the petition, and in a second paragraph alleged that the defendant, Swift Coal and

Timber Company, owned that 161 acres and that defendant, Shepherd, was its tenant, and that the trespasses complained of in the petition were committed on that tract; and it made its answer a counterclaim and asked that it be adjudged the owner of the 161 acres. The reply denied that the corporate defendant owned any part of the 161 acres claimed by it, and upon submission after preparation the court dismissed the petition as well as the counterclaim of the corporate defendant, which in effect adjudged that none of the litigants owned the 161 acres of land described in the answers; and the judgment left the corporate defendant in possession of that tract through its codefendant, Shepherd, as its tenant. Complaining of that judgment plaintiff prosecutes this appeal.

The determination of the whole case rests upon the true location of patent No. 24,130, issued by the Commonwealth to Jonathan Smith in 1845 as assignee of Elijah Combs, who had previously procured land warrant No. 360, and the survey and patent to Smith included a part of the land covered by that warrant. The patent issued to Smith calls for one hundred acres, while the survey made in his behalf as assignee of Combs calls for 150 acres; but in both the patent and the survey the calls and distances are the same, and in neither of them are there any natural objects called for, except at the beginning corner, which is "a white oak and chestnut oak in the dividing ridge between the Line Fork and Leatherwood Creek near the chestnut flat which is the waters of the North Fork of the Kentucky river." From the beginning corner the calls in the survey are: "Thence (1) N. 50 E. 80 po. to a stake; (2) N. 120 po. to a stake; (3) N. 72 W. 60 po. to a stake; (4) N. 66 W. 100 po. to a stake; (5) N. 20 W. 54 po. to a stake; (6) N. 80 W. 250 po. to a stake; (7) S. 67 W. 60 po. to a stake; (8) S. 76 E. 286 po. to a stake; (9) S. 52 W. 203 po. to a stake; (10) S. 116 po. to a stake; (11) E. 90 po. to the beginning." The courses and distances in the patent are the same as those shown in the survey, except in the patent the distance of the ninth call is 213 poles, instead or 203 poles as stated in the survey. The court found that there was an error in both the survey and the patent, and that to locate the patent so as to make its boundaries and contour conform to the figure of the plat filed by the surveyor in the land office, the first and the ninth calls should each be reversed, so that the one would read "N 50 *W*. 80 poles" instead of

"N. 50 *E*. 80 poles" (as stated in the survey and patent) and that the other one read "S. 52 *E*. 213 poles" instead of "S. 52 *W*. 213 poles." By thus reversing those two calls the court adopted a figure, or plat, shaped somewhat like the one made by the surveyor in his certificate, issued to obtain the patent, and which was filed in the land office at Frankfort. But the court's location of the patent made it include entirely different ground from that covered by the surveyor's plat; there being not an inch of ground covered by the same plats, and they had nothing in common with each other except the same beginning point. In fact the land included in the surveyor's plat lies east of that included in the plat adopted by the court in its judgment, a distance of from a quarter of a mile (after the first call), to at least two miles at the end of the seventh call. The plat made by the surveyor, as a part of his certificate, very much resembles in shape an ordinary shot gun standing upright with the hammer and the sights to the east and the butt of the stock altered by making its west line parallel with the gun barrel and the gun itself resting upon an acute angle. The figure adopted by the court is somewhat the same shape, but to make it conform to the surveyor's plat the court in its judgment turned it to the left (west) 90 degrees, and made some changes in the courses of some of the lines.

The location of the patent, according to the courses and distances contained in its calls, as well as those in the survey, makes a figure corresponding in shape to an ordinary stew pot with the handle attached to the top of the lid and running to the left (west) at an angle of a little less than 45 degrees. We have adopted these homely illustrations in lieu of inserting figures of the three plats, because we think our illustrations can be equally as well understood and we save space, expense and time in doing so.

The court seems to have proceeded upon the theory, not only that the plat of the surveyor when there was a conflict between it and the calls in the patent, was infallible, but that it was its duty under the adjudications of this court, and the rules governing the location of patents, to make the boundaries of the patent conform to the shape of the surveyor's plat; though to do so would necessitate the reversing of calls and the inclusion of land within the located patent, though miles away from that included in the surveyor's plat. To do this it was not

only necessary for the court to adjudge that the surveyor made a mistake in some of his calls but, further, that he in making the plat was also mistaken in the cardinal points and should have placed his meridian line at exactly right angles to the way it was found on the plat, so as to make its top point east on the plat instead of north. However, with the respective plats before us it can be easily seen that when the meridian line is thus changed the surveyor's plat, and the one adopted by the court, would each include some of the same land, while other land would be included in each of them, not found in the other one.

The supreme task of the court in locating a patent is to ascertain the intention of the parties at the time of making the survey and to adopt the location which the parties intended to make upon the ground at the time. For the performance of this task numerous rules have been adopted largely, if not entirely, analogous to the rules for the construction of other contracts and writings. None of them is inexorable nor should any of them be given indubitable weight. Everything else being equal, courses and distances surrender to natural objects, and when there are no natural objects called for considerable weight should be given to courses and distances, but in running a line along a given course to a designated point that point should be reached at the expense of the given distance. Under the same circumstances, if there is uncertainty and ambiguity in the description contained in the patent, making the construction from the papers in the case only and excluding extraneous facts and circumstances, the plat is both admissible and potent evidence and is given considerable weight. If, however, the extraneous facts and circumstances are such as to conclusively show that there was a mistake or an error made in the plat of the surveyor it will be disregarded and the plat will be located according to the evident intention of the parties at the time the survey was made as gathered from all the evidence in the case; for it must not be forgotten that the same surveyor who made the survey and entered the courses and distances therein from his field notes, was the same person who made the plat, and the possibility of a mistake on his part is almost as probable in the one case as in the other. He was as much apt to commit error in drawing an ocular demonstration of his description in the survey (which is the plat) as he was to commit an error in writing out that description from his

field notes As instances of the weight to be given the surveyor's plat, in an effort to locate a patent, we refer to the cases of Hardaway v. Webb, 172 Ky. 589; Louisville Property Co. v. Rose, 184 Ky. 221, and numerous cases referred to therein. The opinion in the Webb case says: "The admissibility as evidence of the original survey or plat constituting the basis of a patent, has long been recognized in this jurisdiction as competent, with other evidence on the subject, to explain a mistake or ambiguity in the description given by the patent of the land granted, or to supply the omission by such description of a course, distance or object necessary to correctly determine and fix its boundary." Numerous other cases are cited in that opinion in substantiation of the rule, that where the patent on its face shows evident errors, as far instance, the omission of a call, or that its courses in the calls will not close, or where a natural object called for becomes lost, or other similar errors and which have not been cured or corrected by the actions of the parties themselves, "the original plat of the survey may be always used in evidence to show the position of the land, and is evidence of the most potent kind in determining the original location of the lines and corners."

The Louisville Property Company case was also one where the plat was resorted to, with controlling influence, in an effort to locate the patent where "something else appeared" to establish the mistake "except a discrepancy between the figure made by platting the patent calls and the surveyor's plat," and in that opinion, in stating the circumstances under which the plat might be resorted to, and the weight to be given it, we said: "Controlling weight has often been given to the plat by this court (where, however, no doubt, 'something else appeared' than merely the discrepancy between the survey and plat), upon the theory, doubtless, that the surveyor might have unconsciously made an error in transcribing his field notes of the courses, which he could not have easily carried into his plat without noticing the dissimilarity of the figure on the plat and the one he had laid on the ground and had in mind. Mercer v. Bate, 4 J. J. Mar. 340; Hogg v. Lusk, 120 Ky. 419; New Era Land Co. v. Childs, 161 Ky. 588, 171 S. W. 417; Hardaway v. Webb, 172 Ky. 589, and many other cases." In that case it appeared that the original survey was actually located upon the ground up to its tenth corner, but the last two lines were not so located.

Since the time of the survey in that case until the litigation the natural objects (trees), called for in the patent, had been removed and all evidence of their location was lost. There was no evidence in the record as to the location of the tenth corner, and it was said, "So we must look to a survey of the patent for the location of this tenth corner," and in an effort to locate it it was further said that, "In the case at bar the lines and corners up to the tenth corner were actually located on the land by the surveyor, and whenever this has been done and a controversy arises as here, as to the true location of one or more of such lines, the effect is to relocate *his* location, and to do this resort is had first to natural objects described by him, and in the absence of such objects to contemporaneous construction of interested parties, reputation and information in the vicinity and among those having knowledge as to the actual location as made by the surveyor; and whenever upon such extraneous evidence as to the true location as originally made, it appears that there is an error in the patent, the plat or certificate of survey, the documentary evidences of what he did and being of equal dignity, since both are certificates made by the surveyor at the time of his location, may be looked to and that description accepted, whether in the survey or plat, that under all the proof is believed to accord with the location as originally made, if either accords with the original location on the land as proven, but the original location if established must be accepted even though at variance with the called for courses and distances in all of these documents."

Clearly, that case and the others hereinbefore referred to, went no further than to hold that the plat made by the surveyor who made the certificate for the patent was not to be resorted to except where there was an evident mistake in the calls of the patent or where "something else appeared" to show that the calls of the patent were from some cause insufficient to locate the boundary; and in the cases calling for a resort to the plat it should not be accepted as conclusive but only as "potent evidence." There are no mistakes appearing in the face of the patent here involved and the only "something else appearing" in the case is the necessity of lengthening the last call from "E. 90 poles to the beginning" to "E. 290 poles to the beginning," which makes the quantity of land contained in the plat, as thus made, 500 acres instead of 150 acres.

That it is competent to so extend a line in order to close
the survey, especially when it calls to run to a natural
object, which in this case is the beginning corner tree, is
too familiar to require the citation of supporting cases.
It is likewise true that mere quantity or acreage of the
land called for (being ordinarily a matter of description)
is of little evidential value in determining the true loca-
tion of a disputed boundary and is given the least weight
in such investigations, unless a clear intention is shown
from the muniments of title themselves that the acreage,
as therein expressed, is to control the boundaries given.
Steele v. Williams, 12 Ky. L. R. 770; Kendrick v. Bur-
chett, 28 Ky. L. R. 342, 89 S. W. 239; Alexander v. Hill,
32 Ky. L. R. 1147, 108 S. W. 255; Rock Creek Property
Co. v. Hill, 162 Ky. 324; May v. Wolf Valley Coal Co.,
167 Ky. 525, and 9 Corpus Juris, 227-228.

The facts in this case coincide with those found in the
case of Hall v. Pratt, 142 Ky. 561, with the exception of
the two circumstances mentioned, and we are convinced
that the principles announced in that case should govern
this one.    The patent there involved is what is known as
a "call patent," i. e., the corners were all, except the be-
ginning one, stake corners.    In such cases it is generally
presumed that the land was not actually run out by the
surveyor but that he platted it by protraction.    The only
difference between the patent involved in that case and
the one here is that according to the proof in this case
there was an actual survey made of the Smith patent to
its fifth corner.    In that case, as here, the lines called for
in the patent closed by running the last line to the begin-
ning corner.    The figure made, according to the calls of
the patent, was an entirely different shaped one in that
case from that made by the surveyor in his certificate, as
is true in this case, but the court did not allow that fact
to prevail over the calls of the patent, and in doing so
said: "The patent calls seem to enclose a body of land,
and on the face of the patent there is nothing to indicate
a mistake in it.    Nor is there anything in the evidence to
show that there was a mistake made by the surveyor in
transcribing the notes of his work and certifying them to
the land office; or that the registrar made a mistake in
issuing the patent, giving in it different calls from those
certified to him.    The theory of there being a mistake is
rested upon the fact that the surveyor's certificate, which
had a plat of the land attached to it, as required by law,
shows a different figure from that made by platting the

calls as they appear in the patent. Appellants cite and rely upon certain opinions of this court to the effect that the surveyor's certificate and plat may be looked to to correct an error in the patent calls. (Alexander v. Lively, 21 Ky. Law Rep. 159; Spradling v. Patrick, 19 Rep. 1038; Bell County, &c. v. Hendrickson, 24 Rep. 371; Bruce v. Taylor, 25 Rep. 163; Mercer v. Bates, 27 Rep. 843, and Morgan v. Lewis, 29 Rep. 200.)   But it must first appear that the mistake is in the patent as issued.   If nothing else appears in a 'call' patent—that is, one whose corners are all stakes, or all but one, or whose lines were not run out and marked at the time, except a discrepancy between the figure made by platting the patent calls, and the surveyor's plat, it is not proof of a mistake in the patent. It is as apt to be a mistake in the surveyor's plat.   It is not suggested in this case that the calls in the patent and those in the surveyor's certificate are different.   The surveyor's plat is of equal dignity with his other certified work, but not superior.   The correct running of the patent in such state of case as we have here, is to follow its calls, courses and distances, and closing the last line so as to make a complete boundary.   In this view of the case, the eastern boundary of appellant's land (the Ezekiel Hall 2,500 acres) is the one adopted by the court under the plea of limitation as having been fixed by the adverse possession of the appellees.   Further evidencing the correctness of this conclusion in the instant case, is the fact that appellants and the adjacent owners for many years, for twenty or more, have treated that as the true line of that boundary.'' A sustaining case is that of Ross Wetzell & Co. v. The Mountain Oil Co., 141 Ky. 411.

It will be observed that the opinions in the above two cases, and in the Louisville Property Company case, permit proof of contemporaneous construction of interested parties and proof of reputation and information in the vicinity and among those having knowledge of the actual location as made by the surveyor, as facts evidencing the true location of the patent at the time it was made.   Other cases upholding that rule of evidence are Howes v. Wells, 100 S. W. (Ky.) 245; Wand v. Corbin, etc., 107 S. W. (Ky.) 753; Taylor and Crate v. Forrester, 148 Ky. 201, and other cases therein referred to.   It is shown in this case that Jonathan Smith not only assisted the surveyor at the time the survey was made around to the fifth corner of the patent, but a short while after he obtained his

patent he and a witness, who testified in the case, sur-
veyed it around its exterior boundaries and marked them,
and Smith and his vendees claimed to those marked lines
from that time afterward, and those lines were continu-
ously regarded thereafter as the boundaries of Smith's
patent. Not only so, but in the year 1861 there was a
patent issued to Ambrose Metcalfe for 30 acres of land
just east of the Smith patent, the beginning corner of
which was " a poplar and maple on a line of 150 acre sur-
vey made in the name of Jonathan Smith." The line of
the Jonathan Smith patent, upon which was the begin-
ning corner of the Metcalfe patent, is a line made by
plat according to the calls in the Smith patent, without
reversing any of them and without resorting to the plat
made by the surveyor and by which the court was con-
trolled in its judgment. In 1864 there was a patent is-
sued to Thomas Yearly for 100 acres of land lying west
and south of the Jonathan Smith patent as platted ac-
cording to the calls therein. The second and third lines
of the Yearly patent coincide with a part of the ninth
line and all of the tenth line of the Smith patent, and
clearly shows that the parties had in mind the location
of the senior Smith patent when the Yearly patent was
surveyed. The competency of the relative location and
calls of the surveys and patents to Yearly and Metcalfe,
though subsequent to the Smith patent, is upheld by this
court in the cases of Whalen v. Nisbett, 95 Ky. 470; Thur-
man v. Leach, 116 S. W. (Ky.) 300, and cases therein re-
ferred to. The land now owned by plaintiff is that in-
cluded in the Yearly patent referred to, and that por-
tion of the Smith patent as located according to the calls
therein by extending the last one to the beginning corner,
lying west of a ridge between Axhandle Branch and Bark
Camp Fork of Leatherwood Creek and it is that portion
of the Smith patent as so located lying west of that ridge
that is involved in this suit.

Under the facts and circumstances appearing in the
record, and guided by the principles of the opinions here-
inbefore referred to we see no escape from the conclu-
sion that the court erred in dismissing plaintiff's petition.
It should have adjudged it the owner of the land de-
scribed in the petition and granted the injunction prayed
for, rendering judgment in favor of plaintiff for the sum
of $10.00, which was the value, according to the proof, of
the timber wrongfully cut and removed from its land
through the trespasses complained of.

We feel that we should not close this opinion without referring to the case of Asher, etc. v. Ky. Union Co., 27 Ky. L. R. 1102, which was one involving plaintiff's title to the same Smith patent, and in which it was held that that patent covered the land now in controversy. The defendants here, however, were not parties to that suit, nor were some of the questions now litigated presented in that action, so far as the opinion shows. We refer to it, however, to show plaintiff's title to the land from the Commonwealth, since, in this case as in that one, there was not filed a deed or other conveyance from Smith to Metcalfe to whom the former sold the land. That deed, however, was proven in this case by testimony as much or more convincing than its execution was proven in the Asher case and there can be no doubt but that Smith made the conveyance to Metcalfe, from whom there is a continuous title of record to the time plaintiff purchased the land when sold under a decree of the District Federal Court for Kentucky in 1882.

It might not be inappropriate to say that the corporate defendant obtained its alleged title to the land claimed by it through a deed executed by its codefendant Shepherd a short while before the filing of this suit, but at the time the latter executed the deed he had no sort of title, possessory or otherwise, and his deed conveyed nothing. Hence the court could do nothing but dismiss the counterclaim, but in as much as that part of the judgment is not before us we refrain from further comments upon it.

Wherefore the judgment is reversed with directions to adjudge plaintiff the owner of the land described in its petition, and to perpetuate the injunction against defendants from trespassing thereon, for judgment for $10.00 damages against them, and for other proceedings consistent with this opinion.