## Hays v. Greasy Brush Coal Co.

### Fuson et al. v. Same.

Sept. 26, 1941.

J. Smith Hays and William Hays for Greasy Brush Coal Co., and another.

Golden & Lay for Greasy Brush Coal Co.

H. H. Owens for K. C. Land Co. and others.

J. J. Tye and H. L. Bryant for appellee George W. Tye and another.

James M. Hays for J. M. and Minerva F. Hays.

Stephens & Steely for Phillip C. Fuson et al.

Opinion of the Court by Sims, Commissioner—Affirming.

While not consolidated by a formal order these two cases were heard together in the circuit court and disposed of in one judgment and both will be decided in this opinion. The pleadings are numerous and some of them are lengthy, therefore we will not attempt to give a synopsis of the pleadings but will content ourselves with the mere statement that they raise the issue as to who is the owner of a small tract of something over 13 acres of unfenced mountain land which is valuable for a coal deposit known as the Dean seam. The coal is being mined by a lessee of all the claimants with the royalty held by a trustee to be paid to the one the court decides has title to the land in controversy.

In reality both suits are to quiet title to which there are four claimants; George W. Tye, Minerva Frances Hays, the heirs of James Fuson and the Greasy Brush Coal Company (hereinafter referred to as the Company). The chancellor decided in favor of the Company and Miss Hays and the Fuson heirs appeal. Tye is president of the Company and while he asserted title individually to an undivided one-half interest in the land, he appears to have done so as a formality and prosecutes no appeal.

The real controversy is whether or not patent No. 69005 issued by the Commonwealth to James M. Hays in 1913 covers vacant and unappropriated lands or whether it covers land embraced in patent No. 63267 issued to James Fuson in 1890 for 25 acres, and whether or not James Fuson included this tract in a deed he executed to S. S. Fuson in 1896. Each claimant pleaded a paper title, also title by adverse possession; and the Company in addition pleaded James M. Hays acquired this 13.75-acre tract under a partnership agreement, therefore he held it as trustee for his associates.

To get a clear picture of this controversy it is necessary to state briefly the history of some of James M. Hays' land transactions. In 1905 he and George W. Tye agreed to purchase coal lands on Brush and Greasy creeks in Knox and Bell counties, Kentucky, each to bear one-half of the expense and to own one-half of the lands. Soon thereafter they took S. B. Dishman and J. Smith Hays, a brother of James M. Hays, into the ven-

ture, each having a one-fourth interest therein. James Fuson conveyed his lands to S. S. Fuson, and James M. Hays purchased same from S. S. Fuson and Hays' father-in-law, D. T. Chestnut, the latter having asserted a claim to a lien against the lands. On April 19, 1909, the Hays brothers, Dishman and Tye formed a corporation known as the Greasy Brush Coal Company, to which they conveyed the lands they had purchased. On May 19, 1909, James M. Hays made entries in the surveyor's books in Bell County and four surveys were made on April 19, 1913, and on May 16, 1914, patents numbered 69004, 5 6 and 7 were issued to him by the Commonwealth. James M. Hays moved from Kentucky to Oklahoma before these patents were issued and Tye testified he attended to the patents, bore the expense of securing them and was reimbursed by the Company since the patents were obtained to perfect the Company's title to these Fuson lands. Hays conveyed all the lands covered by the four patents to the Company with the exception of No. 69005 which was retained by him under a claim that it was his individual property.

It is admitted by all parties that the James Fuson patent of 1890 is incorrect as to some courses and distances and there is but little dispute that natural monuments, corners and the lines of adjoining patents are correctly given therein. It is contended by Tye that when James M. Hays discovered this error in the James Fuson 1890 patent he refused to convey the 13.75 acres covered by his patent No. 69005 to the Company, but conveyed same to his daughter, Minerva Frances Hays, by a deed bearing date of June 14, 1935, who claims to be a bona fide purchaser for value without notice and is asserting title to this small tract of land. James M. Hays further acquainted James Fuson's heirs with the error in the 1890 patent and agreed to pay them $25 per acre for all of it to which they could clear the title, and presented them with a deed to sign which conveyed to his daughter certain lands Hays thought the Fuson heirs owned. Tye filed suit against James M. and Minerva Frances Hays and the Company asking that it be adjudged that he and Miss Hays are joint owners of the 13.75 acres; or if that be not decreed, he asks that the land be adjudged to the Company. Miss' Hays and the Company each asserted title through their respective counterclaims.

After the visit from James M. Hays the Fuson heirs instituted suit against him, the Company, its stockholders, the operating lessee and Minerva Frances Hays, contending the land in controversy did not pass under the deed from James Fuson to S. S. Fuson, and that it was included within the boundary of the James Fuson 50-acre patent of 1882 and the James and Franklin Fuson 50-acre patent of 1879, making the title of the heirs superior to the Company's title which claimed under the James Fuson 25-acre patent of 1890 and superior to the title of James M. Hays, or his daughter, Minerva, who claimed under patent No. 69005 issued in 1913. The chancellor found that the land in controversy was included in the James Fuson patent of 25 acres of 1890 and that it was conveyed by him to S. S. Fuson, the Company's remote grantor, and the Company's title thereto should be quieted. From this judgment Minerva Frances Hays appeals, as do the heirs of James Fuson. During the litigation it developed that James M. Hays had conveyed the land in dispute to his daughter by a deed dated in 1935 and both action were dismissed as to him.

All parties concede that the James Fuson patent for 25 acres of 1890 which is No. 63267 contains several errors in its calls and it is further conceded that when this patent is properly located this controversy will be solved. This is largely a fact case with little, if any, dissension among the attorneys as to the law applicable. The record is quite voluminous and much of the testimony is that of surveyors and engineers as to how they ran certain lines and located other lines, monuments and corners in some dozen or more patents and deeds. There are innumerable exhibits and a great number of maps filed, hence it is impracticable for us to attempt to go into a minute discussion of the record and we must content ourselves with a statement of the conclusions reached with but a brief recitation of the evidence supporting those conclusions.

The James Fuson 25-acre patent of 1890 contains 10 calls. There is no dispute as to the location of the beginning corner or as to the first three lines which were run out on the ground. From the fourth corner the patent was not actually surveyed but was platted, or as referred to in the record and briefs was "office made" or "fabricated." The proper location of these platted or

fabricated lines and the corners thereto contain the solution of these cases. The fourth corner is in the line of the Levi Goin patent of 1855 and the fourth and fifth calls, S. 28 E. 50 poles, S. 64 E. 20 poles, both run with the Levi Goin line. The maps of the surveyors testifying for Miss Hays and for the Fuson heirs show they ran these two lines according to courses and distances which took them south and east of the Levi Goin line called for. H. M. Yeager, an efficient surveyor and engineer who was a witness for the Company, testified that by changing these two calls from south to north and extending the distances approximately 5 poles, he reached an undisputed poplar where Levi Goin cornered with Leroy Goin's patent of 1842. Yeager was fortified in his conclusion that this was the correct way to run these two lines in that the distances called for in the Levi Goin patent from the three hickorics north of a point known as the "Water Rock" to the poplar corner of Levi and Leroy Goin was 113 poles, while the distances from the third to the sixth corners of the James Fuson 25-acre patent (all calling for the Levi Goin line) when added aggregate 110 poles.

The next two calls (the sixth and seventh) in this James Fuson 25-acre patent are "N. 24, E. 30 poles to a stake at Leroy Goin's line; thence S. 63 E. 24 poles to a stake at corner of same." In order to go from the poplar corner of Levi and Leroy Goin to a known sixth corner in Leroy Goin's patent of 1842, it was necessary for Yeager to change these two calls into one line, "N. 89. 30 E. 113.5 poles." In the deed D. T. Chestnut and wife executed to James M. Hays on Oct. 21, 1905, this line was "N. 89 W—poles to a stake corner of said Leroy Goin," which call was corrected in a deed from Chestnut to the company Aug. 24, 1911, to read: "N. 89 E. 115 poles to a stake corner of Leroy Goin" which is quite convincing that Yeager made no error in converting the sixth and seventh calls in this James Fuson 25-acre patent into the line just mentioned. Indeed, there is no controversy about the line "N. 89.30 E. 113.5 poles" being the southern boundary of the Leroy Goin patent.

T. J. Ingram, a surveyor witness for the Fuson heirs, testified that in running the seventh line, S. 63 E. 24 poles, he changed it to N. 39.30 E. 117 poles in order to reach the Leroy Goin line. Ingram ran the sixth

line as given in the James Fuson 25-acre patent but it did not touch Leroy's line or even come near it. J. M. Culton, a surveyor witness for Miss Hays, in running this same line changed its course about one degree and added 100 poles to the distance, and the seventh call he changed from S. 63 E. 24 poles to N. 89 E. 24 poles. Neither of the two surveyors ran the sixth and seventh lines according to this patent and we conclude Yeager is correct because the line he ran in lieu of these two lines coincides with the Leroy Goin line which was called for.

In the eighth call, "thence with the same (Leroy Goin line) N. 62 E. 30 poles to the top of the mountain near the Needle Eye Rock at the old mountain road," Yeager increased the distance to 75 poles while Culton increased it to 90 poles. Yeager ran the course of the ninth call but added 94 poles to reach a white oak corner in the James Fuson 50-acre patent of 1882. The tenth call reads "thence with said line (Fuson's 1882 patent) to the beginning." To follow the lines of the Fuson 1882 patent from the white oak corner to the beginning of the 25-acre patent eleven lines must be traversed, and appellants contend that this last call in the Fuson 25-acre patent is for only one line. Evidently they lose sight of the fact that this last call in the 25-acre patent is with the line of this 50-acre patent to the beginning, and instead of this being one straight line it happens to be eleven lines.

In thus locating the James Fuson 25-acre patent, Yeager correctly let the courses and distances give way to the objects and lines of other lands called for in this patent. We have written many times that courses and distances must give way to natural objects and that in running a line along a given course to a designated point, the point should be reached regardless of the given distance. Albertson v. Chicago Veneer Co., 177 Ky. 285, 197 S. W. 831; Kentucky Union Co. v. Shepherd, 192 Ky. 447, 234 S. W. 10; Metropolitan Life Ins. Co. v. Hoskins, 273 Ky. 563, 117 S. W. (2d) 180. In Alexander v. Hill, 108 S. W. 225, 32 Ky. Law Rep. 1147, it was written that where the patent is bounded by artificial lines, established points and fixed corners, but that by following the courses and distances called for, the natural objects, artificial lines and fixed corners are not reached, then courses and distances must yield to

the natural objects and established boundaries of other tracts called for, and designated known points therein must be accepted as the true boundary of the land in dispute. There is no controversy as to the first three calls in this 25-acre patent. But upon leaving the fourth corner if the courses and distances are run according to the calls in the patent, not one of the next five calls will touch the boundary lines of adjacent properties called for in that instrument. This strikes us as being almost conclusive that appellants erroneously located this 25-acre patent when they blindly followed the courses and distances of the fourth and fifth calls thereby ignoring the boundary lines called for in adjacent property. While Culton, surveyor for Miss Hays, did reach the Leroy Goin patent by running the course of the sixth line and extending the distance 100 poles, he utterly ignored the fact that the fourth and fifth calls of the patent called for Levi Goin's line. By so doing, Culton prevented the 25-acre patent from including the land in dispute.

If the 25-acre patent is run out as contended for by appellants, it covers no lands which were not owned by James Fuson at the time it was issued. It is apparent from this record that in 1890 James Fuson realized the patents he had obtained previously did not cover all the lands he claimed on Fuson Branch. In attempting to obtain title to whatever vacant land which then existed between his lands and the lands of Levi Goin and Leroy Goin extending east to the county line, he caused an entry and survey to be made which would take in any such vacant land. While this patent as located by Yeager covers much more than 25 acres, it is doubtful if it would include more than 25 acres of unappropriated lands, because it greatly overlapped other lands then owned by James Fuson as well as Birch Rickets. The record shows James Fuson and his immediate successor in title, S. S. Fuson, claimed to the Levi Goin and Leroy Goin lines called for in the 25-acre patent and cut timber from the land up to these lines.

Having reached the conclusion that this 25-acre patent included the lands claimed by Miss Hays as well as that claimed by James Fuson's heirs, and that it was included in the deed James Fuson executed to S. S. Fuson, who in turn conveyed it to the Company, it is not necessary for us to determine whether or not patent No.

69005 was taken in the name of James M. Hays for the benefit of his associates or the Company along with the three other patents of small tracts which Hays obtained to perfect title of the lands he and his associates acquired for the Company. However, it is worthy of mention that the 13.75 acres covered by patent No. 69005 was included in the boundary of land leased by Hays and associates to I. Glickman, which lease Hays signed. In 1920 suit was filed against Glickman on this lease, the petition being prepared by Hays as attorney for the Company; which recited that the land described in the lease belonged to the Company. When confronted with that fact, Hays stated he signed the lease without reading the description of the land contained therein and that when he brought the suit very naturally he alleged that the Company was the owner of the land described, including this 13.75 acres. It is strange that a man possessing the shrewdness this record shows Hays has would sign the Glickman lease without reading the description which he must have known covered lands almost surrounding a small parcel he contends he conveyed to his daughter in 1935. Neither he nor his daughter paid taxes on this land until this litigation arose and she withheld her deed from record for some four years.

Likewise, the conduct of the Fuson heirs was rather unusual. For more than forty years they have stood by and never asserted title to the land they are now claiming, nor did they list it for taxes. They do not know where it is located nor its boundaries, nor its acreage. The chances are they never would have asserted any title to the land had they not been visited by Hays who informed them he had discovered some land to which they had title and for all they could make good title he offered to pay them $25 per acre. It was after receiving such information from Hays that they instituted their suit.

Appellants insist that should this court affirm the judgment of the chancellor as to the James Fuson 25-acre patent of 1890 it will be in direct conflict with the judgment of the United States District Court for the Eastern District of Kentucky in the case of Tye et al. v. Kentucky Bell Corp. et al. An examination of the federal court judgment which was filed as an exhibit in this litigation shows it did not involve the land here in con-

troversy and this opinion will have no effect upon that judgment.

We think the chancellor correctly decided the controversy and his judgment is affirmed.