## Smith et al. v. Slusher.
## Same v. Gray et al.

Oct. 2, 1942.

J. J. Tye and J. D. Tuggle for appellant.

Flem D. Sampson and J. Milton Luker for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

Joe Smith and C. W. Sproul, claiming to be owners and in possession of a certain described tract of land in Knox county on Trace Branch and Hog Branch of Stinking Creek, brought suit in equity on Feb. 9, 1937, against C. B. Slusher to quiet their title. In May following they filed a separate suit against Brice Gray and Frank Warren for $375 damages for wrongfully cutting timber on this land, and asked that they be enjoined from further cutting timber and that plaintiffs' title be quieted against Gray and Warren.

There is no order consolidating the two cases, but all the defendants in the two suits filed a joint substituted answer which merely traversed the allegations of the two petitions. Hon. Robert R. Friend, the Special Judge who tried the cases, treated them as if they had been consolidated and rendered judgment dismissing the petitions. They have been briefed together and heard as one case here and this opinion will dispose of them both.

As the defendants did not plead their own title and did not ask by way of counterclaim that it be quieted but contented themselves with denying plaintiffs' title, it was incumbent upon plaintiffs under Section 11, Ky. Statutes, to allege and prove both title and actual possession. Brown v. Martin, 239 Ky. 146, 39 S. W. (2d) 243; Taylor v. Wilson, 182 Ky. 592, 206 S. W. 865; Childers v. York, 187 Ky. 332, 218 S. W. 1027; Crawley v. Mackey, 283 Ky. 717, 143 S. W. (2d) 171.

The plaintiffs alleged and proved as their source of

title a patent for 100 acres issued D. R. Clark in 1890, while the title of defendants came through an 83-acre patent issued to Isaac Mills in 1891. This Clark patent begins at three chestnut oaks on top of the ridge between Hog Branch and Trace Branch of Stinking Creek, and it recites this point is also the beginning corner of the John G. Warren patent of 85 acres issued in 1872. The Clark patent then runs with the lines of this Warren patent to the Brice Mills patent. However, there are two Brice Mills patents—one of 50 acres issued in 1872 and the other of 100 acres issued in 1873—which two Mills patents are about a mile and a half apart, as we scale the plat of J. M. Culton filed in the record. It is the contention of the plaintiffs that the Brice Mills land called for in the Clark patent is the 100-acre tract and not the 50-acre tract, while the defendants contend that the Brice Mills land called for is the 50-acre Mills patent which adjoins the John G. Warren patent.

The chief controversy in this litigation is the correct location of the beginning corner of the Clark patent. Plaintiffs have located it at a point something over a mile almost due east of the point where defendants located it. It is the contention of the defendants that it was necessary for the plaintiffs to locate the beginning point where they did in order to reach the Brice Mills patent of 100 acres. If plaintiffs' location of this corner is correct, then the Isaac Mills 83 acre patent overlaps the senior Clark patent and plaintiffs must prevail; while if the defendants have propertly located the beginning corner of the John G. Warren patent, there is no overlapping of the Clark patent by the Mills patent and the chancellor's judgment must be affirmed.

Without attempting to discuss and analyze this voluminous record, we will briefly give our reasons for holding that the beginning corner of the Warren patent, which is also the beginning corner of the Clark patent, is correctly located by the defendants. The head-waters of a small stream, "Tater Hollow", which flows into Trace Branch, is some 100 or 200 yards from where defendants located the beginning corner of the Warren patent. J. M. Warren, 69 years of age, testified that he was born on the mouth of Tater Hollow and more than 50 years ago his uncle, Tom Gambrel, pointed out to him three chestnut oaks marked as corner trees standing within 100 yards of the sources of Tater Hollow as the

beginning corner of the Warren survey. Garrett Taylor, 68 years of age, was with Richard Risner, a surveyor, when John G. Warren and Brice Mills pointed out these same marked trees as Warren's beginning corner. David Mills, 66 years of age and a resident of that community, helped survey this Warren land three times within the last 40 years and he always started at these marked trees on the ridge near the head of Tater Hollow.

J. M. Culton, defendants' surveyor, testified that when he made his survey on Sept. 15, 1937, two of these chestnut oaks were standing and the stump of the third was nearby; that one of the standing trees plainly showed three knife marks on the ''coming in'' side. The other was a stooping tree and on its exposed side the weather had obliterated its marks. But Culton found another nearby tree marked on its ''going out'' side.

Culton also examined the timber at the corner claimed by plaintiffs. He found two dead chestnut oaks and some 30 feet away there was a depression which looked like a tree had been uprooted and decayed. On one of the standing trees he saw no marks. On the other there was an axe mark and some two feet from the ground there were two other axe marks, but these were so located as not to indicate this was a corner tree.

The plaintiff, C. W. Sproul, testified that two of the three chestnut oaks were standing at the point plaintiffs claim was the corner of the Warren survey and were marked with three hacks as corner trees. Joe Smith, the other plaintiff, likewise testified these two trees were marked, but did not describe the marks. J. T. Williamson, plaintiffs' surveyor, found three chestnut oaks, two of which were marked as corner trees, although the marks on one of them were very dim and could barely be discerned.

We regard defendants' evidence relative to the location of the beginning corner of the Warren patent as stronger and more definite than the evidence of the plaintiffs because it locates same in proximity to the source of Tater Hollow which has long been recognized as near the beginning corner of this Warren patent. Also, other parts of the record fortify us in the conclusion that the defendants and not the plaintiffs correctly located this beginning corner. It is admitted that the plat with the original Clark patent is quite different from the plat

made and filed by plaintiffs' surveyor. As there is some ambiguity in the description contained in this patent, the plat is admissible in evidence and is entitled to considerable weight. Kentucky Union Co. v. Shepherd, 192 Ky. 447, 234 S. W. 10. The original Clark survey has 13 calls, while the plat made by Williamson for plaintiffs reflecting his survey of this land shows 49 calls. To run the Clark patent from the "hickory and rock" corner to the beginning corner as contended by plaintiffs, the line would cross the Gordon Gambrel patent of 1844, the John Warren patent of 1867 and the James H. Warren patent of 1846, much of which is cleared land and has been occupied for more than 50 years. The Clark patent calls for 100 acres and the plaintiff, Smith, refused to have his surveyor calculate the acreage in the survey made by him, and the latter estimated it as containing 150 acres, while Culton estimated the acreage contained in the plat representing the plaintiffs' survey as containing from 350 to 500 acres.

Upon a consideration of the whole record we have no doubt but that the defendants have correctly located the beginning corner of the Clark patent and that it is not located at the point contended for by the plaintiffs. When this Clark patent is run from the beginning corner of the 85 acre Warren patent it does not include the land in controversy, and we conclude that the chancellor was right in dismissing plaintiffs' petitions.

Since we have reached this conclusion, it is not necessary to consider the other questions raised in briefs.

The judgment is affirmed.